# Illinois Official Reports

## Appellate Court

---

### *USF Holland, Inc. v. Radogno, Cameli, & Hoag, P.C.*, 2014 IL App (1st) 131727

---

| | |
|---|---|
| Appellate Court Caption | USF HOLLAND, INC., a Michigan Corporation, Plaintiff-Appellant, v. RADOGNO, CAMELI, and HOAG, P.C., an Illinois Corporation, and PERRY W. HOAG, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-13-1727 |
| Filed<br>Rehearing denied | December 15, 2014<br>January 28, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-6760; the Hon. Thomas L. Hogan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Williams, Montgomery & John, Ltd., of Chicago (Michael C. Bruck, Alyssa M. Reiter, and Megan Rees, of counsel), for appellant.<br><br>Donohue, Brown, Mathewson & Smyth, LLC, of Chicago (Norman J. Barry, Jr., and Karen Kies DeGrand, of counsel), for appellees. |

Panel                   JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal arises from the trial court's order granting summary judgment in favor of defendants-appellees Radogno, Cameli, & Hoag, P.C. (Radogno), and Perry W. Hoag dismissing the legal malpractice claim asserted against them by their former client, plaintiff-appellee USF Holland, Inc. (USF).

¶ 2                                    BACKGROUND

¶ 3    The legal malpractice claim at issue in this appeal concerns the defense of a personal injury lawsuit against USF arising from a motor vehicle accident in Indiana. On June 19, 2002, a truck driven by Dale Gilchrist, a USF employee, attempted a left-hand turn on a highway in Michigan City, Indiana, and collided with an oncoming car driven by Anthony Hardin. Lisa Keppen, a passenger in Hardin's car, was severely injured in the collision and was rendered a paraplegic.

¶ 4    Within weeks of the accident, USF retained the Radogno law firm, of which Hoag is a partner,[1] to represent USF in the event a related lawsuit was filed. On December 4, 2003, Keppen filed a complaint in the circuit court of Cook County against USF (which, although a Michigan corporation, allegedly conducted business in Illinois sufficient to subject it to the jurisdiction of Illinois courts). The complaint also named as defendants USF's parent corporation, USFreightways Corporation, and Gilchrist; Radogno represented these defendants as well as USF. Among other allegations, Keppen's lawsuit alleged that Gilchrist had negligently operated the truck and that USF had violated Illinois statutes governing the maintenance and operation of commercial motor vehicles involved in interstate commerce.

¶ 5    Correspondence dated January 14, 2004 from Radogno to USF, entitled "Status Report," discussed Radogno's strategy for the Keppen action. That correspondence indicated Radogno's view that "Indiana state court would be the preferred location to litigate this matter." The report explained that "[t]he jury verdict potential for a catastrophic injury is lower in northern Indiana than in Cook County, Illinois." In addition, Radogno's report noted that "Indiana allows apportionment of fault to a 'non-party' (in this case driver Anthony Hardin)," but that "Illinois would require us to file a contribution action against Hardin" as a third-party defendant. However, Radogno noted that the circuit court "probably does not have jurisdiction over Hardin," who was not an Illinois resident. Radogno also advised that, although Illinois courts could exercise jurisdiction over USF because it was "doing business" within the state, it believed USF "ha[d] a viable motion to dismiss and transfer to Indiana based on the doctrine of

---

[1] In this opinion, we use the term "Radogno" to refer collectively to the defendant law firm as well as the individual defendant Perry W. Hoag.

*forum non conveniens.*" Thus, Radogno stated that its plan was to file a motion to dismiss the Keppen action against USF on this basis.[2]

¶ 6  Radogno did not file an answer or plead any affirmative defenses to Keppen's complaint, but responded on February 17, 2004 by filing a motion to dismiss under the doctrine of *forum non conveniens*. On the same date, Radogno filed a motion to dismiss Gilchrist, an Indiana resident, due to lack of personal jurisdiction. The parties conducted limited discovery related to the *forum non conveniens* motion and fully briefed the motions to dismiss. There is no explanation in the record, but the motions were not decided until June 29, 2005, approximately 16 months after they were filed. On that date, the circuit court granted the motion to dismiss Gilchrist from the case but denied USF's motion to dismiss under the doctrine of *forum non conveniens*.

¶ 7  Pursuant to Supreme Court Rule 306(a)(2), this court granted USF's request for leave to file an interlocutory appeal of the order denying the *forum non conveniens* motion to dismiss. Ill. S. Ct. R. 306(a)(2) (eff. Jan. 1, 2004). On December 30, 2005, we affirmed the trial court's denial of the *forum non conveniens* motion. *Keppen v. USF Holland, Inc.*, 362 Ill. App. 3d 1228 (2005) (unpublished order under Supreme Court Rule 23).

¶ 8  Following the unsuccessful appeal of the denial of its *forum non conveniens* motion, USF elected to change its defense counsel. In early 2006, Radogno withdrew as USF's counsel and USF's successor counsel, the law firm Patton & Ryan, LLC, took over the legal defense of USF and USFreightways in the Keppen lawsuit. Notably, no answer or affirmative defenses had been filed on behalf of USF prior to the change in its counsel from Radogno to Patton & Ryan.

¶ 9  On June 20, 2006, through its successor counsel, Patton & Ryan, USF and USFreightways Corp. filed an answer which included a single affirmative defense to the Keppen lawsuit. The affirmative defense claimed that "the sole proximate cause of the occurrence which is the subject of [Keppen's complaint] was the negligence of nonparty, Anthony Hardin." Specifically, the affirmative defense alleged Keppen's injuries were the result of Hardin's negligence in: "(a) [f]ailing to keep his vehicle under proper control; (b) failing to yield the right of way ***; (c) failing to take those steps necessary to avoid the collision; (d) driving his vehicle at an excessive rate of speed; and (e) failing to maintain a proper and sufficient lookout." Notably, the affirmative defense did not cite any particular statutory basis or otherwise indicate that it relied upon either Illinois or Indiana state law.

¶ 10  In response, on July 11, 2006, Keppen filed a motion to strike the affirmative defense claiming that the defense was barred under either Illinois or Indiana law. Keppen's motion to strike argued that "Illinois law does not provide for a 'non-party' defense" and asserted that the Illinois statutory deadline for USF to assert a contribution claim against Hardin had expired in December 2005, two years after the filing of Keppen's complaint. See 735 ILCS 5/13-204 (West 2004). In addition, Keppen's motion to strike argued that under section 34-51-2-16 of the Indiana Code of Civil Procedure, USF was required to plead any nonparty defense no later than 45 days before the expiration of the 2-year limitations period governing Keppen's

---

[2]With respect to Gilchrist, a non-Illinois resident, Radogno's letter concluded that the Illinois court had no personal jurisdiction over him and that Radogno would seek his dismissal on that basis. With respect to defendant USFreightways, Radogno noted this party was "merely a holding company and not the employer or principal of driver Gilchrist," and thus would move for summary judgment with respect to that defendant.

negligence claim and that this deadline had also passed. Ind. Code Ann. § 34-51-2-16 (West 2004). Thus, Keppen's motion argued that "under either Illinois or Indiana law, a non-party defense is untimely, and not allowed."

¶ 11    The record on appeal does not indicate that Keppen's motion to strike the affirmative defense was opposed by USF's successor counsel, and there is no record of any oral argument on that motion. On September 12, 2006, the trial court granted Keppen's motion to strike USF's affirmative defense. The corresponding written order did not indicate the basis on which the court struck the affirmative defense or whether it relied on Illinois or Indiana law in doing so. The record on appeal does not indicate that USF's successor counsel moved to reconsider that order, sought interlocutory appeal on the issue, or otherwise sought clarification from the trial court as to its grounds for striking the defense.

¶ 12    Following the order striking the affirmative defense, USF and Keppen eventually settled Keppen's claims against all defendants for the sum of $5.65 million in September 2007. A portion of the settlement proceeds, $3.65 million, was funded by USF's insurer. The remaining $2 million was funded through a payment by YRC Worldwide, Inc. (YRCW), a corporation of which USF is a subsidiary.

¶ 13    On June 20, 2008, USF filed a complaint against the Radogno law firm and Hoag individually, asserting one count of legal malpractice and one count of breach of contract. USF alleged that "as a direct and proximate result of [Radogno's] negligence *** USF was left without its primary defense to the *Keppen Suit* and, therefore, faced significant exposure that it would not have otherwise faced had Defendants not violated their standard of care. As a consequence, USF was forced to settle the *Keppen Suit* for the sum of $5,650,000." USF claimed that Hoag had recommended a *forum non conveniens* motion to dismiss the suit and transfer the case to Indiana state court because "the verdict potential of the *Keppen Suit* was higher in Illinois" and because "an Indiana jury could find USF 'not guilty' because under Indiana law the jury could allocate 100% of the fault to a non-party such as Hardin in accordance with the Indiana Comparative Fault Act."

¶ 14    USF further alleged that "although the premise for moving to transfer the *Keppen Suit* to Indiana was so that the Indiana non-party defense and Hardin's fault could be asserted," Radogno "failed to timely file a 'non-party defense' as an affirmative defense."[3] Specifically, USF claimed Radogno had allowed the deadline to lapse, arguing that under the language of section 34-51-2-16 of the Indiana Code: "If a defendant is served with summons and complaint more than 150 days prior to the expiration of the limitation of action that the claimant may have against the non-party, the defendant shall plead any 'non-party defense' not later than forty-five days before the expiration of that limitation of action."[4] See Ind. Code Ann. § 34-51-2-16 (West 2004).

¶ 15    USF claimed that "[a]bsent the ability to present evidence of Hardin's fault" through the Indiana nonparty defense, "USF's primary defense *** was lost, which significantly increased the exposure at trial and any settlement value of the case." USF alleged that Radogno had breached its duty of care by, among other things, "needlessly pursu[ing] a forum non conveniens motion while allowing the time limits for raising the non-party fault or contribution

---

[3]The complaint also alleged that Radogno and Hoag committed malpractice by failing to file a timely contribution action against Hardin under the Illinois Code of Civil Procedure. However, that contention is not at issue in this appeal.

[4]This statutory time restraint is often referred to as the "150/45 day" rule or deadline.

claim to expire, losing those claims forever." USF claimed that "[a]lthough Hardin was at fault for all, or nearly all, of Keppen's injuries," Radogno's "failure to timely file or preserve any actions, motions or defenses relating to Hardin's fault rendered it impossible to allocate any fault to Hardin." USF further alleged that if Radogno had "complied with [the] applicable standard of care and timely and appropriately raised Hardin's fault as a defense[,] *** USF could have successfully defended the *Keppen Suit* or settled it for a minimal sum." USF's complaint also included a breach of contract claim which alleged that Radogno had violated its "agree[ment] to defend USF in the *Keppen Suit* and to comply with the applicable standard of care[,] *** including but not limited to preserving defenses and filing pleadings *** on a timely basis."

¶ 16    Radogno filed a motion to dismiss USF's malpractice suit on September 19, 2008. That motion argued that USF's claim that Radogno had been negligent in failing to assert the non-party defense under Indiana law had been "waived by virtue of USF's failure to create a record in the Keppen case from which this Court or any court could analyze and rule on the propriety and judicial basis of the trial court's decisions in the Keppen case." Radogno specifically argued there was an insufficient record to assess the alleged failure to assert the Indiana nonparty defense, as USF's successor counsel had "failed to file a written opposition to the Keppen motion to strike the non-party defense," "failed to create a record or transcript of the hearing on the Keppen motion to strike," failed to seek review or reconsideration of the order granting the motion to strike, and failed to obtain clarification from the Keppen court as to whether it had applied Illinois or Indiana law.

¶ 17    Apart from its waiver argument, Radogno's motion to dismiss additionally argued that the Indiana nonparty defense could have been asserted even after Radogno ceased to represent USF. Radogno argued that the governing Indiana statute "grants discretion to the trial court to alter the time period for filing a non-party defense," and thus the defense was "arguably viable." Radogno's motion further emphasized that Keppen, as Hardin's passenger at the time of the accident, was "aware of a possible cause of action against Hardin" and thus "she could not have been surprised or prejudiced" when successor counsel filed USF's affirmative defense naming Hardin.

¶ 18    Radogno also argued that "given the statutory provision that the Indiana non-party defense be filed with the 'defendant's first answer,' and the trial court's prolonged consideration of the USF motion to dismiss for *forum non conveniens*, the Keppen court had both discretion and good reason to 'alter' the time for filing the non-party defense" under the Indiana statute. Ind. Code Ann. § 34-51-2-16 (West 2004). Radogno thus argued that since the nonparty defense had remained viable, USF could not recover on the theory that Radogno had failed to preserve this defense.

¶ 19    USF's opposition to the motion to dismiss argued that it did not need to create a record in the underlying litigation in order to preserve its legal malpractice case, and further argued that USF's conduct in the underlying action did not amount to a waiver of the claim that Radogno failed to preserve the Indiana nonparty defense. USF also argued that the language in section 34-51-2-16 of the Indiana Code allowing a trial court discretion to depart from the 150/45-day rule was inapplicable, since the statute allows the alteration of the 150/45-day deadline only if "consistent with: (1) giving the defendant a reasonable opportunity to discover the existence of a nonparty defense; and (2) giving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim." Ind. Code Ann. § 34-51-2-16 (West 2004). USF argued that neither of these

- 5 -

conditions was met and thus the trial court did not have discretion to permit a later assertion of the nonparty defense. USF specifically argued that the first condition–giving the defendant time to discover the nonparty defense–was inapplicable because Radogno "was obviously aware of the nonparty defense *** only weeks after Keppen filed suit." USF argued that the second statutory condition, which was intended to allow plaintiffs the opportunity to add new defendants, did not support any departure from the statutory time limit to assert the defense, as "Keppen knew that Hardin was a potential defendant because she was a passenger in his vehicle when she was seriously injured." Thus, USF maintained the trial court in the Keppen lawsuit "had no discretion to alter the limitations period because the time for filing a claim against Hardin had long expired while [Radogno] was still involved in the case."

¶ 20    The trial court heard oral argument on Radogno's motion to dismiss on January 12, 2009. In denying Radogno's motion, the court found that "[a] plain reading of [section 34-51-2-16 of the Indiana Code] shows that an alteration of the time limitation for filing a nonparty defense can only be given to allow the defendant a reasonable opportunity to discover the existence of a nonparty defense and allow the plaintiff a reasonable time to add that nonparty as a joint defendant." The court found that USF "was served within 150 days before the expiration of the statute of limitations, but defendant did not plead any nonparty defense prior to 45 days" before the end of the limitation period. The court concluded that "[Radogno] ha[s] not shown that after they were discharged by USF *** both of the grounds for altering the limitation period for [the] nonparty defense existed, making it a viable defense that USF's successor counsel would have been responsible for pursuing."

¶ 21    The trial court also acknowledged that it did not decide, and had not been asked to decide, whether the Keppen court had relied on Illinois or Indiana law when it struck the affirmative defense naming nonparty Hardin. The court indicated this would be a question for a jury in assessing the underlying "case within a case." The trial court further noted that Radogno had cited no case supporting its argument that USF "was responsible for making a record for this Court to review as if this were an appeal of the underlying case." The motion to dismiss was denied in an order dated January 12, 2009.

¶ 22    Radogno filed its answer and two affirmative defenses to the malpractice complaint on February 23, 2009. Radogno pleaded an affirmative defense of waiver on the grounds that USF, through its successor counsel, had failed to oppose Keppen's motion to strike USF's affirmative defense and failed to seek reconsideration or clarification as to whether the Keppen court was applying Indiana or Illinois law. Radogno argued that USF, "[b]y virtue of its failure to create a record in the Keppen court establishing the state law followed by the Keppen court in striking the Indiana non-party defense," had "waived any right in the current litigation to seek a conflict of law determination for this court which, without benefit of a record[,] *** cannot speculate as to the reasons for the Keppen court's decision." Radogno's second affirmative defense, entitled "comparative fault," similarly alleged that USF was "negligent in its defense of the Keppen litigation" by failing to promptly file an Indiana nonparty defense, failing to oppose Keppen's motion to strike, and failing to seek clarification or reconsideration of the Keppen court's ruling.

¶ 23    Following denial of Radogno's motion to dismiss, the parties engaged in extensive discovery, including depositions of fact and expert witnesses. USF filed a motion for partial summary judgment on June 24, 2011 with respect to the breach element of its malpractice claim. USF argued there was no genuine issue of material fact that Radogno and Hoag "breached their duty of care by failing to preserve or protect [USF's] best defense to the

[Keppen lawsuit] within the applicable statutes of limitation" under the Indiana Code and Illinois law.[5] On September 12, 2011, Radogno responded by opposing plaintiff's motion as well as making a cross-motion seeking a partial summary judgment ruling that, as a matter of law, Radogno had *not* breached its duty of care in its representation of USF. With respect to the viability of the nonparty defense under Indiana law, Radogno again argued that USF had "waived" any claim that Indiana law applied in the Keppen case" due to, *inter alia*, the failure of successor counsel to specifically plead the Indiana statutory nonparty defense, its failure to oppose Keppen's motion to strike USF's "sole proximate cause" affirmative defense concerning Hardin, and its failure to seek an explicit choice of law ruling from the Keppen court.

¶ 24 Radogno's cross-motion separately argued that, even if Indiana law had governed the Keppen action, the Indiana nonparty defense remained viable at the time Radogno was replaced as USF's counsel. Relying on the language of section 34-51-2-16 of the Indiana Code permitting the trial court to alter the time limitations of the 150/45-day rule, Radogno argued that USF, through its successor counsel, "clearly had the right to ask the Keppen court to 'alter' the filing period of a non-party defense," but had failed to do so. Radogno argued that the assertion of the defense even after expiration of the 150/45-day deadline would be appropriate since "Keppen was aware of a cause of action against Hardin because he was the driver of the car in which she was injured," and she thus had "reasonable opportunity" to sue Hardin prior to the expiration of her limitation period. Radogno further argued that: "Given the statutory provision that the Indiana non-party defense be filed with the 'defendant's first answer,' and the prolonged consideration of [USF]'s *forum non conveniens* motion, the Keppen court had the discretion and good reason to 'alter' the time for filing a non-party defense naming Hardin–if Indiana law applied." Ind. Code Ann. § 34-51-2-16 (West 2004). In addition, Radogno asserted that departure from the 150/45-day rule would be especially warranted because, as the Keppen court had never specifically determined that Indiana law governed the underlying action, USF had never gained "actual knowledge" of a nonparty defense. *Id.*

¶ 25 Apart from the cross-motions on the issue of whether a breach had occurred, on September 9, 2011, Radogno filed a separate motion seeking summary judgment on the basis that USF could not establish the element of damages to support a malpractice claim. Radogno contended that summary judgment in its favor was warranted since entities other than USF had funded the $5.65 million settlement of the Keppen suit, such that USF had not suffered actual damages. Specifically, Radogno argued that discovery had revealed that USF had been acquired in 2005 by YRCW, which had since funded the defense of the Keppen lawsuit and paid $2 million of the Keppen settlement. Radogno further contended that the remaining $3.65 million of settlement funds had been paid by an insurer, National Union/AIG. Citing the decision in *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58 (2002), for the proposition that the collateral source rule does not apply in a legal malpractice action and damages paid on behalf of a plaintiff by independent sources are not recoverable, Radogno claimed USF could not establish that it had suffered any damages from the Keppen settlement.

¶ 26 On February 22, 2012, the trial court, a different judge than the one who ruled on Radogno's motion to dismiss on January 12, 2009, issued a memorandum opinion and order addressing: (1) USF's motion for summary judgment on the element of breach of the standard

[5]The parties' arguments regarding a potential contribution action against Hardin under Illinois law are not at issue in this appeal.

of care; (2) Radogno's cross-motion for summary judgment on that issue; and (3) Radogno's motion for summary judgment on the issue of damages.

¶ 27    First, the court addressed the parties' cross-motions for summary judgment with respect to the element of breach and concluded that neither party was entitled to summary judgment on that issue. With respect to USF's argument that Radogno had failed to preserve the nonparty defense, the court examined section 34-51-2-16 of the Indiana Code and concluded that since Keppen filed her complaint more than 150 days prior to the expiration of her personal injury statute of limitation period, USF's "non-party defense should have been filed 45 days prior to the expiration of Keppen's *** statute of limitation," or by early May 2004. The court thus stated that Radogno represented USF when the "official deadline" of the 150/45-day rule had passed.

¶ 28    However, the court noted that "[USF's] own expert *** testified that Illinois procedural law does not require the filing of an answer and affirmative defense while a motion to dismiss is pending." Further, the court noted Hoag's deposition testimony that, had Radogno been retained as USF's counsel, he had intended to assert the Indiana nonparty affirmative defense with USF's initial answer following the resolution of the *forum non conveniens* motion. The court noted Hoag's belief "that the non-party defense statute of limitations under the Indiana statute is not a 'hard and fast' deadline" and cited the testimony of Radogno's legal expert that the firm had exercised reasonable professional judgment because "the filing of the nonparty defense while the *forum non conveniens* motion remained undecided could well have negatively influenced the circuit court in its ruling on the motion to dismiss."

¶ 29    Given the language of section 34-51-2-16 concerning the 150/45-day rule, the court found that Hoag's "belief that the non-party defense could have simply been filed when the answer was filed, regardless of when it was filed, is flawed." However, the court acknowledged that in a "savings clause," separate provisions of section 34-51-2-16 afforded the trial court discretion to permit later assertion of the nonparty defense. The court recognized that this discretion was "why [Radogno] believe[s] that the statute of limitations *** is not a 'hard and fast' deadline," and supported Radogno's position that "this nonparty defense was still viable when [USF] obtained successor counsel." Nonetheless, the trial court found that Radogno and Hoag had "not undisputedly shown that after they were discharged by [USF], the nonparty defense was still viable for [USF's] successor counsel."

¶ 30    Although the February 22, 2012 order stated that Radogno was "still representing [USF] at th[e] time the statute of limitations passed for asserting the non-party fault defense under the Indiana statute," the trial court nonetheless concluded that "a question of fact exists as to whether [Radogno] breached the standard of care in not filing a nonparty defense pursuant to Indiana law." Thus, the court declined to grant summary judgment to either USF or Radogno on this element of USF's malpractice claim.[6]

¶ 31    After denying summary judgment to either party on the issue of breach, the court turned to Radogno's motion for summary judgment on the issue of damages. The court recognized that

---

[6]The trial court also rejected Radogno's argument that USF had "waived" its malpractice claim based upon its successor counsel's failure in the Keppen action to file a nonparty defense under the Indiana statute or seek a choice of law ruling. The court reasoned that although "[Radogno] may be correct *** that [USF] failed to obtain a choice of law ruling" after Radogno's representation, "the evidence nonetheless establishes that the deadline for raising the non-party fault defense passed while [Radogno] still owed a duty of care to [USF]."

- 8 -

"a plaintiff's damages in a malpractice suit are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case," and that the "plaintiff must affirmatively prove that he suffered actual damages as a result of the attorney's malpractice." The court also acknowledged that, generally, the "collateral source rule holds that benefits received by the injured party from a source independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." However, the court recognized that the appellate decision of *Sterling Radio*, 328 Ill. App. 3d 58, held that the collateral source rule did not apply in a legal malpractice action, such that a plaintiff could not recover as damages settlement amounts paid on his behalf by a corporation. The trial court found that *Sterling Radio* was "still sound law in Illinois" and that the decision "carved out a special exception to the collateral source rule in legal malpractice cases."

¶ 32   In ruling on the summary judgment motion regarding damages, the trial court distinguished between the portion of the Keppen settlement allegedly paid by USF's parent corporation, YRCW, and that paid by its insurer. With respect to the $3.65 million paid by the insurer, the court held that *Sterling Radio* controlled, such that the collateral source rule did not apply. Thus, the court granted Radogno's motion with respect to this portion of the settlement, concluding USF "cannot recover the $3.65 million that was paid by the insurance company."

¶ 33   However, the trial court declined to grant summary judgment with respect to the remaining $2 million of the settlement funds. Although Radogno argued this amount was paid by USF's parent corporation, YRCW, which should be regarded as "another collateral source," the court found the record presented a genuine issue of material fact on that issue. The court reasoned: "It is possible *** that [USF] paid for that portion of the settlement directly," as "[t]he record does not clearly and affirmatively establish that another party, YRCW, paid for that settlement." The court noted that since "[USF] is a subsidiary of YRCW, it does not have its own bank account" and it was thus "impossible for [USF] to directly write the settlement check or wire transfer funds." Nonetheless, the court cited deposition testimony by a senior accountant at YRCW indicating that, although the $2 million "was technically paid for by YRCW out of [its] global account, this loss was realized *only* by [USF] and no other entity." (Emphasis in original.) The court also cited the accountant's testimony that although YRCW technically held the cash, "at the end of day, [USF] gave $2 million dollars to YRCW to cover the Keppen settlement." The court concluded that "due to the complex corporate structure" of USF, "a question of material fact exists as to whether [USF] paid for that portion of the settlement or if it was actually paid by a third party." Thus, the court denied Radogno's motion for summary judgment with respect to this $2 million portion of the Keppen settlement.

¶ 34   On March 22, 2012, Radogno moved for clarification of the court's February 22, 2012 order on the parties' summary judgment motions. Radogno asserted that language in the prior order could be "misconstrued as a ruling regarding the expiration of the time for filing an Indiana nonparty defense," although the court had recognized that it was not clear whether the 150/45-day deadline was a "hard and fast" rule. Radogno contended that the order's statements that the time for asserting the defense had expired while Radogno represented USF conflicted with the court's recognition elsewhere that Radogno had "presented a reasonable interpretation of [section 34-51-2-16] and raised a question of fact that the nonparty defense remained viable after [USF] retained successor counsel." Radogno thus asked the court to modify the February 22, 2012 order by striking any statements that the section 34-51-2-16 deadline had expired and "clarify[ing] that the issue of the expiration of the time for asserting a nonparty affirmative defense remains unresolved."

¶ 35    Accordingly, on June 28, 2012, the court issued a modified opinion and order which removed statements from the original order suggesting that the court had finally determined that the time to raise the Indiana nonparty defense had expired. The order, as modified, emphasized that due to the discretionary language of section 34-51-2-16, there was an unresolved issue as to whether the nonparty defense was still viable when USF's successor counsel replaced Radogno. The court stated that "any non-party defense under Indiana law arguably may have been filed 45 days prior to the expiration of Keppen's June 19, 2004 statute of limitations," but noted "the Indiana statute does provide the trial court with discretion to alter" the 150/45-day deadline and recognized Radogno's position that "the savings clause of [section 34-51-2-16] is not a 'hard and fast' deadline."

¶ 36    The modified order found that "a reasonable inference may be drawn that [Radogno and Hoag] were negligent for not filing a nonparty defense within 45 days of the expiration of the statute of limitations," but "[o]n the other hand, a reasonable inference can equally be drawn that [Radogno and Hoag] exercised reasonable care in bringing a *forum non conveniens* motion prior to raising an Indiana nonparty defense." The order thus concluded that "because more than one reasonable inference can be drawn regarding whether or not [Radogno and Hoag] breached the standard of care, a question of material fact exists which precludes granting either" USF's or Radogno's motion for summary judgment on this issue.

¶ 37    Following the court's ruling on the summary judgment motions, the parties prepared for trial and filed several motions *in limine*. Among these, USF filed a "Motion in Limine No. 1" seeking a ruling that Indiana substantive law governed the underlying Keppen lawsuit, premised largely on the basis that the collision occurred in Indiana and involved Indiana residents. In addition, USF filed a "Motion in Limine No. 2" that requested three rulings related to the interpretation of section 34-51-2-16 of the Indiana Code: (1) that the deadline for filing the Indiana nonparty defense had passed on May 5, 2004, or 45 days before the expiration of Keppen's 2-year statute of limitations period; (2) that the language in section 34-51-2-16 describing the circumstances in which a court may exercise discretion to extend the time to plead the nonparty defense was not applicable to Keppen's lawsuit; and (3) that because Keppen's suit had been filed more than 150 days before the expiration of the 2-year statute of limitations, section 34-51-2-16 did *not* allow a court discretion to alter the time to assert the nonparty defense beyond June 19, 2004, the expiration of the 2-year limitations period.

¶ 38    On April 26, 2013, the court, yet a different judge from the one who had ruled on the February 2012 motions for summary judgment, heard oral argument on USF's motion *in limine* No. 1, regarding whether Indiana or Illinois substantive law governed the underlying Keppen lawsuit. After hearing USF's arguments in favor of application of Indiana law and Radogno's arguments that Illinois law governed, the court reserved decision.

¶ 39    Oral argument on the motions *in limine* continued on April 29, 2013. At the outset of proceedings on that date, the court remarked that this was a "unique case *** because the Court is asked to sit as a trial court not as an appellate court and is asked to sit and make rulings on things that were never asked for in the underlying claim." The court noted that "the defendant in the underlying case *** had opportunities to do some things that the defendant didn't do, and now ask[s] the court to *** make a ruling that the defendant never asked for." Nevertheless, with respect to USF's motion *in limine* No. 1, the court concluded that "Indiana law applied to the underlying action" and thus granted USF's motion on that issue.

¶ 40    The court then turned to the interpretation of section 34-51-2-16 for purposes of deciding USF's motion *in limine* No. 2. The court relied largely upon *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905 (Ind. 2001), in which the Indiana Supreme Court held that a defendant could raise a nonparty defense against former codefendants who had since settled and become nonparties. The court noted *Owens Corning*'s holding that, for purposes of whether the defendant had acted with "reasonable promptness" after learning of a nonparty defense, the defendant had acquired knowledge of a nonparty defense against a former defendant "only when it received notice that the entity had been dismissed from the action." The court found that *Owens Corning* "indicate[d] that the Indiana Supreme Court has considered at least an issue that was substantially similar to this and has ruled in a way that would have allowed [USF] in the Keppen case to plead Indiana law after receiving the negative rulings" on USF's *forum non conveniens* motion.

¶ 41    In response, USF argued that *Owens Corning* was a unique factual situation and emphasized the provision of section 34-51-2-16 of the Indiana Code which states that if a defendant is served more than 150 days prior to the expiration of the claimant's limitation period, the defendant shall plead any nonparty defense not later than 45 days prior to the expiration of that period. Ind. Code Ann. § 34-51-2-16 (West 2004). USF argued that Indiana courts had interpreted the 150/45-day rule as "a hard and fast deadline" and urged that the nonparty defense could have been asserted by USF no later than 45 days prior to June 19, 2004, the expiration of Keppen's personal injury limitation period. Although USF acknowledged the statutory language that the trial court could "alter" that rule in certain circumstances, USF asserted that the outer limit of the court's discretion to extend the time to assert the nonparty defense would be at the end of Keppen's limitation period, or June 19, 2004.

¶ 42    At the conclusion of oral argument, the court determined that section 34-51-2-16 of the Indiana Code "can be interpreted in such a way so as to give a plaintiff or a defendant an opportunity to plead the nonparty defendant defense" notwithstanding the expiration of the claimant's underlying limitation period. The court explained that, assuming that it were "sitting as the judge back in the Keppen case, [it] would have granted an opportunity *** to [USF] so that they could utilize *** Section 34-51-2-16" and "would have allowed [USF] to avail itself of the use of these sections of the Indiana Code of Civil Procedure."

¶ 43    Asked for clarification by USF, the trial court reiterated: "I would have allowed [the nonparty defense] up until the time that–I'd say September of 2006, the date on which the [Keppen] court *** was asked to rule on the defendant's motion for affirmative defense." The court added that, had it presided over the Keppen action, "I may have stricken the actual affirmative defense and asked for another attempt at utilizing the statutory scheme in Indiana, but I think that it would have been appropriate to exercise discretion under those circumstances."

¶ 44    Radogno's counsel asked the court to confirm that: "Plaintiff's Motion in Limine Number 2 is denied, which leaves us with your ruling that Indiana law would have governed the Keppen case, that the statute of limitations contained within the Indiana nonparty defense statute was not as a matter of law blown because *** had there been a request for the Court to allow the filing of the nonparty defense, you would have allowed that." The court answered verbally in the affirmative.

¶ 45    The court proceeded to conclude that its denial of USF's motion *in limine* No. 2 "ma[d]e it impossible for [USF] to prove proximate cause under these circumstances." Radogno proceeded to move for summary judgment "because there no longer is a genuine issue of fact

with respect to the theory that [Radogno] committed malpractice under Indiana law." Asked by the court for its response to Radogno's motion, USF acknowledged "that if the Court is saying that the nonparty [defense] could have been filed as late as September 2006, it does appear difficult for us to make our case." The court thus granted Radogno's motion for summary judgment, as it "[did] not believe that based on the ruling *** with respect to plaintiff's motion, Motion in Limine Number 2, that plaintiff can prove proximate cause" to support USF's malpractice claim.

¶ 46    The court issued a written order on May 1, 2013 that granted plaintiff's motion *in limine* No. 1 but denied motion *in limine* No. 2. On the same date, the court issued a separate written order stating that, in light of its denial of motion *in limine* No. 2, "[USF's] motion for summary judgment is hereby [g]ranted for the reasons set forth by this Court on the record. Judgment be and hereby is entered on all counts in [USF's] complaint at law."

¶ 47    USF filed a notice of appeal on May 28, 2013 and an amended notice of appeal on May 29, 2013.[7] In the amended notice, USF appealed from the final judgment granting summary judgment in favor of Radogno, as well as the accompanying order denying USF's motion *in limine* No. 2. The notice further specified that USF appealed from the portions of the trial court's February 22, 2012 order and modified order of June 28, 2012 that denied USF's motion for partial summary judgment on the element of breach and partially granted Radogno's motion for summary judgment on the issue of damages.

¶ 48                                           ANALYSIS

¶ 49    USF's argument on appeal raises three issues, two of which concern interpretation of section 34-51-2-16 of the Indiana Code regarding the timeliness of asserting a nonparty affirmative defense. First, USF contends that it was error for the trial court to grant summary judgment to Radogno on the basis of the court's stated reason that USF could not establish proximate cause against Radogno. USF argues that the court's conclusion that the Keppen court had discretion to permit the filing of a nonparty defense during Radogno's representation of USF, which was the basis of its denial of USF's motion *in limine* No. 2, was erroneous. Second, USF contends that the trial court erred in denying its earlier motion for partial summary judgment which sought a ruling that Radogno had breached its duty of care in the Keppen action by failing to preserve the Indiana nonparty affirmative defense. Third, with respect to the element of damages, USF appeals the portion of the trial court's order on Radogno's motion for partial summary judgment which held that the collateral source rule did not apply in this legal malpractice action and that USF could not recover damages with respect to the $3.65 million portion of the Keppen settlement paid by USF's insurer.

¶ 50    Each of the contentions in this appeal involves review of decisions upon motions for summary judgment. "The standard of review for the entry of summary judgment is *de novo*." *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002). "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; 735 ILCS 5/2-1005(c) (West 2010).

---

[7]The notices were substantially similar, except that USF's initial notice had not specified that USF sought to appeal the denial of its motion for partial summary judgment on the element of breach of the standard of care.

¶ 51    "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007). "[W]e may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the lower courts relied upon that ground." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). "Although summary judgment is appropriate if a plaintiff cannot establish an element of his claim [citation], it should only be granted when the right of the moving party is clear and free from doubt [citation]." *Id.* at 306.

¶ 52    We further note that review of the summary judgment rulings with respect to the elements of proximate causation and breach in USF's malpractice claim require us to review the trial court's interpretation of section 34-51-2-16 of the Indiana Code. That is, the trial court's May 1, 2013 order granting summary judgment due to lack of proximate causation was predicated on the court's denial of USF's motion *in limine* No. 2, which in turn depended upon the court's conclusion that section 34-51-2-16 did not preclude the assertion of the nonparty defense during Radogno's representation of USF. Similarly, the earlier denial of USF's motion for summary judgment on the element of breach also depended on the trial court's conclusion that USF had not established as a matter of law that under section 34-51-2-16, the time to assert USF's nonparty defense had expired during Radogno's representation. Thus, to the extent that we review the trial court's interpretation of Indiana statutory provisions, the *de novo* standard similarly applies. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 235 (2005) ("Statutory construction is a question of law, subject to *de novo* review.").[8]

¶ 53    USF first contends that the trial court erred in granting summary judgment on the basis that USF could not establish proximate causation to support its malpractice claim. The elements of a legal malpractice claim are well established. "To prevail on a legal malpractice claim, the plaintiff client must plead and prove that the defendant attorneys owed the client a duty of due care arising from the attorney-client relationship, that the defendants breached that duty, and that as a proximate result, the client suffered injury." *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306. "The fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the client's cause of action. Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client." *Id.* at 306-07.

¶ 54    Here, the alleged breach was Radogno's failure to timely plead or preserve the Indiana nonparty defense on behalf of USF in the underlying Keppen action. In deciding USF's motion *in limine* No. 2, the trial court determined that, contrary to USF's contention that section 34-51-2-16 set a "hard and fast" deadline that expired during Radogno's representation of USF, the defense was in fact still available to USF in the Keppen action. After concluding that the nonparty defense was still viable even after Radogno's representation of USF had ended, the trial court reasoned that USF could not establish that Radogno's alleged negligence in failing to raise the defense could have proximately caused any injury. Thus, in order to determine whether the trial court correctly concluded that USF could not establish proximate cause on this basis, we must review the question of whether, in the underlying Keppen action,

─────────────

[8]Radogno argues that an abuse of discretion standard applies to our review of rulings on motions *in limine*. Although that standard is applicable where motions *in limine* concern the trial court's discretion to admit or exclude evidence at trial, the disputed motions *in limine* at issue here concern questions of statutory interpretation, which are subject to *de novo* review.

the Indiana nonparty defense was in fact still viable when USF discharged Radogno as its counsel in 2006.

¶ 55    Moreover, we note that the answer to the same question of statutory interpretation will also be dispositive with respect to USF's second contention on appeal, concerning the trial court's earlier denial of USF's motion for partial summary judgment regarding the breach element of its malpractice claim. As stated by USF in its summary judgment motion, the alleged breach was that Radogno "missed the deadline under Indiana law" to timely assert a nonparty defense while it represented USF, thus losing USF's chance to raise its best defense in the Keppen lawsuit. Thus, if it is determined that the nonparty defense actually remained viable after Radogno's representation of USF in the underlying action, then Radogno did not squander USF's chance to raise the defense and did not commit the alleged breach supporting the malpractice claim.

¶ 56    Before turning to the relevant statutory language, we address Radogno's contention that USF's conduct in the underlying Keppen lawsuit after discharging Radogno and hiring new counsel forfeited USF's right to argue in this malpractice action that the Indiana nonparty defense had been lost due to Radogno's negligence. Radogno relies largely on the fact that USF's successor counsel did not specifically plead the Indiana statutory nonparty defense, but rather generally alleged an affirmative defense that nonparty Hardin was the sole proximate cause of Keppen's injuries. Further, Radogno emphasizes that USF did not file any opposition to Keppen's motion to strike that affirmative defense. Moreover, after that motion was granted, USF did not seek reconsideration or clarification as to whether the trial court had relied on Illinois or Indiana law in striking the defense.

¶ 57    We recognize that USF's successor counsel could have argued, but did not specifically argue, for application of the Indiana statutory nonparty defense and did not obtain an explicit order from the trial court that Indiana law governed the Keppen action. However, Radogno cites no authority suggesting that a malpractice plaintiff's conduct of the underlying lawsuit, particularly its conduct *after* it had discharged defendant counsel, could waive the plaintiff's right to allege malpractice in a subsequent lawsuit. Moreover, as noted by USF, waiver is the "intentional relinquishment of a known right." *Pielet v. Hiffman*, 407 Ill. App. 3d 788, 798 (2011). The record does not suggest that USF's conduct in the Keppen case after it retained successor counsel amounted to an "intentional relinquishment" of the right to assert the nonparty defense under Indiana law. Thus, we do not find sufficient basis in legal authority or on the facts of this case to conclude that USF's conduct in defending the Keppen action after it had discharged Radogno waived its right to assert the alleged malpractice in this case.

¶ 58    We now turn to the question of whether the nonparty defense was viable during Radogno's representation under the relevant Indiana statutory provisions. We note at the outset that we must interpret statutes under their plain language. Our supreme court has explained:

> "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.] When the statutory language is clear and unambiguous, it must be applied as written without resort to extrinsic aids of statutory interpretation. [Citation.] We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature." *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56.

- 14 -

¶ 59     Notably, the Indiana courts endorse the same principles. The Indiana Supreme Court has stated: "The first and often the only step in resolving an issue of statutory interpretation is the language of the statute. [Citation.] [N]othing may be read into a statute which is not within the manifest intention of the legislature as ascertained from the plain and obvious meaning of the words of the statute." (Internal quotation marks omitted.) *State v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 946 (Ind. 1999); see also *State v. American Family Voices, Inc.*, 898 N.E.2d 293, 297 (Ind. 2008) ("The statute itself is the best evidence of legislative intent, and we strive to give the words in the statute their plain and ordinary meaning. *** The plain meaning of the statute, if it has one, must be given effect." (Internal quotation marks omitted.)).

¶ 60     With these principles in mind, we turn to the Indiana statutory provisions at issue in this case. The Indiana Code provides: "In an action based on fault, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a nonparty." Ind. Code Ann. § 34-51-2-14 (West 2004). "The burden of proof of a nonparty defense is upon the defendant, who must affirmatively plead the defense." Ind. Code Ann. § 34-51-2-15 (West 2004).

¶ 61     The time at which a defendant may assert such a nonparty defense is governed by section 34-51-2-16 of the Indiana Code, which provides:

> "A nonparty defense that is known by the defendant when the defendant files the defendant's first answer shall be pleaded as a part of the first answer. A defendant who gains actual knowledge of a nonparty defense after the filing of an answer may plead the defense with reasonable promptness. However, if the defendant was served with a complaint and summons more than one hundred fifty (150) days before the expiration of the limitation of action applicable to the claimant's claim against the nonparty, the defendant shall plead any nonparty defense not later than forty-five (45) days before the expiration of that limitation of action." Ind. Code Ann. § 34-51-2-16 (West 2004).

Following this 150/45-day rule, section 34-51-2-16 further provides a trial court with discretion to depart from these rules under certain circumstances: "The trial court may alter these time limitations or make other suitable time limitations in any manner that is consistent with: (1) giving the defendant a reasonable opportunity to discover the existence of a nonparty defense; and (2) giving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim." *Id.*

¶ 62     In this case, it is not disputed that, during Radogno's representation of USF in the Keppen action, which ended in early 2006, no answer or affirmative defense was filed on behalf of USF. The parties also do not dispute that, as the collision causing Keppen's injury occurred on June 19, 2002, she was subject to a 2-year statute of limitations period for asserting her personal injury claims that expired on June 19, 2004. It is also not disputed that Keppen served her complaint in the underlying action in December 2003, more than 150 days prior to the expiration of the applicable 2-year statute of limitations period.

¶ 63     Thus, USF's position is that the time limit to assert a nonparty defense in the Keppen action was governed by the 150/45-day rule, under which the deadline for asserting a nonparty defense would occur in early May 2004, that is, 45 days prior to the June 19, 2004 expiration of Keppen's 2-year limitations period. USF acknowledges that the last sentence of section 34-51-2-16 gives the trial court discretion to "alter these time limitations" to allow assertion of a nonparty defense with fewer than 45 days remaining in the plaintiff's limitations period, if

consistent with "giving the defendant a reasonable opportunity to discover the existence of a nonparty defense" and "giving the claimant a reasonable opportunity to add the nonparty as an additional defendant." *Id.* However, USF contends that the trial court's discretion under the statute is limited, such that the nonparty defense cannot be asserted after the expiration of the plaintiff's limitations period. Thus, USF argues that Indiana courts "view the plaintiff's statute of limitations as the outer limit of a court's discretion." Under USF's reading, even if the trial court applied the discretionary language to permit assertion of the defense with fewer than 45 days remaining in Keppen's 2-year limitations period, the statute would nonetheless prevent the trial court from allowing a nonparty defense to be filed after June 19, 2004, the expiration of Keppen's limitations period.

¶ 64 In contrast to USF's position that section 34-51-2-16 represents a "hard and fast" rule barring a nonparty defense past the expiration of the plaintiff's limitations period, Radogno argues that the discretionary language in the statute permits the nonparty defense to remain viable even past the plaintiff's limitations period. Radogno thus argues that, in the Keppen action, the nonparty defense against Hardin remained viable at all times during its representation of USF, notwithstanding the expiration of Keppen's underlying limitations period in June 2004.

¶ 65 The chief authority relied upon by Radogno is the Indiana Supreme Court's decision in *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905 (Ind. 2001). That case involved personal injury claims by a pipe fitter who had been exposed to asbestos over several decades before developing lung cancer. The plaintiff's complaint had named 33 manufacturers or distributors of asbestos, including Owens Corning. *Id.* at 907. In its August 1996 answer, Owens Corning reserved its right, in the event plaintiff reached settlements with any codefendants, to " 'specifically delineate those defendants as settling non-party defendants, to request that the court add those defendants to any verdict form submitted to the jury, and to claim credit for any amounts received by the plaintiff from those defendants.' " *Id.*

¶ 66 Over one year later, in October 1997, Owens Corning "filed a motion for leave to amend its answer by adding as identified non-parties the names of the defendants with whom [plaintiff] had settled" (*id.* at 908) as well as "other entities that it contended had caused or contributed to [plaintiff's] injuries and had not been joined as defendants" (*id.* at 912). The trial court permitted Owens Corning to amend its answer to add a nonparty defense for only one of the named entities but otherwise denied the motion to amend. *Id.* After a jury trial resulted in a verdict for the plaintiff, Owens Corning appealed the ruling on its nonparty defense motion. *Id.*

¶ 67 The Indiana Supreme Court analyzed whether the trial court committed reversible error when it prevented Owens Corning from asserting nonparty defenses, including with respect to settling defendants. The court noted: "To ensure fairness to the plaintiff, the burden of pleading and proving the specific name of the nonparty is on the defendant" and thus "a defendant who intends to use a nonparty defense must specifically name the nonparty." *Id.* at 913. Citing the predecessor to section 34-51-2-16 of the Indiana Code (whose relevant provisions are identical to the current statute), the court noted that the statute "requires that a defendant disclose the identity of nonparty defendants within a certain time frame, thus giving the plaintiff notice of any nonparty defendants that the defendant intends to add." *Id.* (citing Ind. Code § 34-4-33-10(c) (1993) (repealed by Ind. Legis. Serv. Pub. L. 1-1998 and reenacted as Ind. Code § 34-51-2-16)).

¶ 68 The Indiana Supreme Court noted that under the statute, "[t]he deadline for naming a nonparty defendant depends upon when the defendant receives notice of the availability of a

certain nonparty to add." *Id.* Under the facts of that case, the court noted that on November 1, 1996, the plaintiff had filed a disclosure statement listing all former employers who had allegedly exposed him to asbestos, a list which "contained all of the parties that Owens Corning subsequently sought to add as nonparty defendants." *Id.* at 914. Thus "Owens Corning had notice of all these entities *** nearly a year prior to naming them" in its motion to amend its answer. *Id.* However, "[a]though Owens Corning knew of all the entities early on" that it intended to assert as nonparties, the court emphasized that "many of them *** were named defendants from the outset." *Id.*

¶ 69    The court's subsequent analysis was based on differentiating between whether the asserted nonparties had been initially named defendants or not. With respect to those entities which were made known to Owens Corning through plaintiff's disclosure, but which had *not* been named as defendants, the Indiana Supreme Court held "these parties should have been added with 'reasonable promptness' " after their disclosure by plaintiff, and thus the trial court was justified in disallowing Owens Corning's addition of such nonparty defenses. *Id.*

¶ 70    However, the Indiana Supreme Court held that the outcome should differ with respect to "nonparties [who] had been named as defendants at the outset of the litigation and subsequently settled with [plaintiff] or were otherwise dismissed from the action." *Id.* Since these entities had initially been named as defendants, "they could not be added as nonparties" prior to their settlement or dismissal; moreover, as named defendants, they were already "known to the plaintiff." *Id.*

¶ 71    The *Owens Corning* decision then quoted the language of section 34-51-2-16 that a " 'defendant who gains *actual knowledge of a nonparty defense* after the filing of an answer may plead the defense with reasonable promptness.' " (Emphasis in original.) *Id.* at 914-15 (quoting Ind. Code Ann. § 34-51-2-16 (West 2000)). The court reasoned that "[b]ecause the former party defendants that Owens Corning sought to add as nonparties could only have been added as nonparties after they were dismissed as parties, we hold that for purposes of the statute, Owens Corning acquired *actual knowledge* of a nonparty affirmative defense relating to a particular entity only when it received notice that the entity had been dismissed from the action." (Emphasis in original.) *Id.* at 915.

¶ 72    The court reasoned that "[t]o hold otherwise would be tantamount either to requiring Owens Corning to do something impossible–assert a nonparty affirmative defense with respect to a named defendant–or to preclude Owens Corning from asserting a nonparty affirmative defense at all with respect to a former named defendant." *Id.* The court found "no support in the statute or its underlying purposes for either of these alternatives," but held: "it is clear to us that the notice provisions with respect to nonparty affirmative defenses are designed, first and foremost, to advise plaintiffs of potential named defendants from which they may be able to obtain recovery and, secondarily, to put plaintiffs on notice generally of the contours of the defendant's case at trial." *Id.* The *Owens Corning* court reasoned that "[n]o violence is done to either of those objectives by permitting a defendant to assert a nonparty affirmative defense reasonably promptly after receiving notice that a named party defendant has been dismissed from the lawsuit." *Id.* Under this logic, the Indiana Supreme Court held that, with respect to at least one former codefendant, Owens Corning had asserted a nonparty defense "within a reasonable time of receiving notice" of the nonparty's settlement. *Id.* Thus, denying Owens Corning's amendment to assert a nonparty affirmative defense with respect to that former defendant constituted reversible error. *Id.*

¶ 73    In this case, Radogno relies on *Owens Corning* as support for the "flexibility of the 150/45 day deadline" and discretion of the trial court to depart from the 150/45-day rule. Notably, however, the *Owens Corning* decision did not actually discuss the provisions of section 34-51-2-16 regarding the 150/45-day rule. In fact, the decision did not specifically state when the plaintiff's underlying limitations period expired, or whether Owens Corning had attempted to assert a nonparty defense fewer than 45 days before the expiration of that limitations period. Rather, the Indiana Supreme Court relied upon the statutory language that "[a] defendant who gains actual knowledge of a nonparty defense after the filing of an answer may plead the defense with reasonable promptness." *Id.* at 913-14; Ind. Code Ann. § 34-51-2-16 (West 2004).

¶ 74    Nevertheless, Radogno contends that *Owens Corning* supports a finding that USF could have asserted a nonparty defense in the Keppen action because it lacked "actual knowledge" of the defense absent any specific ruling by the Keppen trial court that Indiana law would govern. Just as Owens Corning was found to lack "actual knowledge" of a nonparty defense against a codefendant until it became aware that the codefendant had settled (*Owens Corning*, 754 N.E.2d at 915), Radogno argues that "unless and until [USF], through successor counsel, sought a choice of law ruling, and the court elected to apply Indiana law, [USF] would not have had 'actual knowledge of a nonparty defense.' " Radogno thus contends that, because the Keppen court never explicitly held that Indiana law governed (and in fact was never asked to rule on the question by Radogno or USF's successor counsel), USF never obtained "actual knowledge" of the defense and thus it cannot be said that the nonparty defense was ever rendered nonviable.

¶ 75    Although not explicitly argued by the parties, we find that another application of section 34-51-2-16 to the facts of this case is equally plausible. That interpretation emphasizes the plain meaning of the initial sentence of the section directing that: "A nonparty defense that is known by the defendant when the defendant files the defendant's first answer shall be pleaded as a part of the first answer." Ind. Code Ann. § 34-51-2-16 (West 2004). Under this view, since there is no question that an answer was never filed during Radogno's representation of USF in the Keppen action, the nonparty defense necessarily remained viable, and the remainder of the statute–which appears to address assertion of the defense only in the context of *amended* pleadings–would be inapplicable.

¶ 76    Under this application, the language of the statute beyond the initial sentence–including the 150/45-day rule relied upon by USF, and the discretionary provisions relied upon by Radogno–would be implicated *only* if the defendant had in fact already filed an answer, but did not plead a nonparty defense in that first answer. Under that reading of the statute, the initial question in determining whether the nonparty defense had been timely asserted would be whether the defendant had already pleaded his first answer. If no answer had yet been filed, then the defense would necessarily remain viable, as the defendant had not yet had a chance to comply with the statute's initial mandate that a known nonparty defense "*shall be pleaded as a part of the first answer.*" (Emphasis added.) *Id.* Only if an answer had previously been filed would the analysis turn to the subsequent provisions governing whether an amendment asserting the nonparty defense was timely. The application of this interpretation of section 34-51-2-16 to this case leads to the conclusion that, since USF had not yet answered Keppen's complaint while Radogno was still its counsel, the nonparty defense remained viable at the time Radogno was discharged.

¶ 77    Although the Indiana courts do not appear to have addressed this interpretation, this reading of the statute does not conflict with the cases cited by the parties, which concern disputes over whether an *amended* answer asserting a nonparty defense was timely under section 34-51-2-16, rather than the procedural situation presented in this case. Indeed, the Indiana Court of Appeals, in at least one case, has characterized the obligation to assert a nonparty defense in the *first answer* as a "threshold requirement" of the statute. See *McClain v. Chem-Lube Corp.*, 759 N.E.2d 1096, 1106 (Ind. Ct. App. 2001) ("We find that Chem-Lube failed to satisfy the threshold requirement of [section] 34-51-2-16, namely, asserting any nonparty defense in its first answer."); see also *Kelly v. Bennett*, 792 N.E.2d 584, 586 (Ind. Ct. App. 2003) (recognizing that section 34-51-2-16 of the Indiana Code "requires a defendant to plead the defense in its answer if the existence of the defense is known at that time").

¶ 78    An interpretation focusing on the filing of the nonparty defense in the initial answer also appears to be consistent with the Indiana Rules of Trial Procedure, which require affirmative defenses to be asserted in responsive pleadings. See *Paint Shuttle, Inc. v. Continental Casualty Co.*, 733 N.E.2d 513, 525 (Ind. Ct. App. 2000) ("Indiana Trial Rule 8(C) provides that if a responsive pleading is necessary, the party filing the pleading must include with that responsive pleading any affirmative defense it seeks to assert."); Ind. Code Ann. Title 34, Trial Proc. R. 8(C) (West 1992) ("A responsive pleading shall set forth affirmatively *** any other matter constituting an *** affirmative defense.").

¶ 79    Although USF has identified a number of decisions–in the context of motions to amend–where Indiana courts have declined to permit assertion of a nonparty defense past the claimant's limitations period, it has made no credible argument regarding why those cases are controlling in the procedural posture of the Keppen action, where no answer was filed until *after* Radogno was discharged and replaced by successor counsel. As the cases cited by USF concern situations where a defendant had already filed an answer, the initial sentence of section 34-51-2-16 regarding the pleading of a known nonparty defense in the *first answer* did not control; instead, the outcomes in those cases were determined by the subsequent provisions of the statute governing *amended* pleadings seeking to assert the nonparty defense.

¶ 80    For example, USF cites *Templin v. Fobes*, 617 N.E.2d 541 (Ind. 1993), to support its argument that section 34-51-2-16 imposes a "hard and fast" rule. In *Templin*, a van driver and passenger sued a car driver for negligence following a collision between the vehicles. As an affirmative defense, defendant pleaded "that the accident was caused by the fault of an unnamed third party who had negligently designed" the driver's seat in plaintiffs' vehicle. *Id.* at 542. Over a year later, the trial court denied plaintiffs' motion to amend their complaint to add a new defendant, Rockwood, who had allegedly designed the seat. *Id.* Shortly thereafter, the plaintiffs moved for partial judgment with respect to the defendant's nonparty defense, contending that defendant had failed to explicitly name Rockwood as a nonparty at least 45 days before the expiration of the plaintiff's limitations period. *Id.* at 542-43. The trial court also denied this motion, and thus permitted the defendant to "amend his pre-trial contentions to name Rockwood as the nonparty." *Id.*

¶ 81    At trial, the jury returned a verdict in plaintiffs' favor but allocated the vast majority of fault to nonparty Rockwood. *Id.* at 543. However, the Indiana Court of Appeals held that the trial court should not have permitted the defendant to name Rockwood as a nonparty while denying plaintiffs' motion to add Rockwood as a defendant; this had allowed the defendant at trial "to shift the blame to Rockwood, an empty chair the [plaintiffs] were not permitted to fill." (Internal quotation marks omitted.) *Id.* The Supreme Court of Indiana agreed, finding that

- 19 -

plaintiffs "were entitled to judgment because [defendant] failed to name the non-party within the statutory limits." *Id.* at 544. The *Templin* court rejected defendant's argument that it did not need to specifically identify Rockwood as a nonparty because "[plaintiffs] had actual knowledge of" Rockwood "within the relevant statutory period," reasoning that "the trial court should not have considered the state of the [plaintiffs'] knowledge" but "only whether the pleadings demonstrated that [defendant] had timely named Rockwood as a nonparty." *Id.* at 544-45. As Rockwood had not been timely named under section 34-51-2-16's 150/45-day rule, the defendant "should not have been permitted to present a nonparty defense at trial." *Id.* at 545.

¶ 82    USF cites *Templin* for the proposition that the 150/45-day rule is "a strict deadline when suit is filed more than 150 days before the limitation period ends." However, the situation in *Templin* is distinguishable from the facts in this case for at least two reasons. First, the defendant in *Templin* had already asserted a generic nonparty defense before seeking leave to amend its pleading to name Rockwood as a nonparty, whereas Radogno had not filed an initial answer or affirmative defenses on behalf of USF. Second, the *Templin* trial court had permitted the defendant to assert a nonparty defense with respect to Rockwood, who thus became an "empty chair" at trial, while denying plaintiffs' motion to amend their complaint to sue Rockwood directly. In contrast, there is no indication from the record in this case that Keppen ever sought to name Hardin as a party in the underlying personal injury action against USF.

¶ 83    USF also relies on language from an Indiana Court of Appeals decision that "when service occurs more than 150 days before the expiration of the statute of limitations, the rule governing the amendment to assert a nonparty defense strikes a balance between providing a reasonable opportunity to the defendant to discover and assert a nonparty defense and providing a reasonable opportunity to the claimant to join the alleged nonparty before expiration of the statute of limitations." *Kelly v. Bennett*, 792 N.E.2d 584, 586 (Ind. Ct. App. 2003). However, *Kelly* concerned the denial of defendant's leave to amend his answer to add the nonparty defense; that is not the situation in the underlying case here. Indeed, the above-quoted language explicitly refers to the 150/45-day rule as "*governing the amendment* to assert a nonparty defense." (Emphasis added). *Id.* Moreover, the defendant in *Kelly* had *not* been served with the underlying complaint more than 150 days before the running of the statute of limitations for the underlying claim, and thus the 150/45-day rule did not apply. *Id.* at 587. Rather, the *Kelly* court found that the proper inquiry under section 34-51-2-16 was whether defendant "assert[ed] his nonparty defense with reasonable promptness" after learning of the existence of the defense. *Id.* (finding the trial court did not abuse its discretion in denying the nonparty defense "where more than one and one-half years elapsed between the answer and the motion for leave to amend").

¶ 84    The other decisions cited by USF for its contention that the nonparty defense may never be permitted past the expiration of plaintiff's limitations period also involved rulings on defendants' motions to amend. USF cites *McClain v. Chem-Lube Corp.*, 759 N.E.2d 1096 (Ind. Ct. App. 2001), in which the Indiana Court of Appeals stated that section 34-51-2-16 "permits a trial court to alter the 150/45 day time period" but that "a trial court's ability to alter the time period is restrained by the outer limits set by the expiration of the applicable period of limitations." *Id.* at 1105. However, that case concerned a motion to amend an answer to add a nonparty defense approximately six months after the plaintiff's limitation period had expired. *Id.* Similarly, in *Terre Haute Warehousing Service, Inc. v. Grinnell Fire Protection Systems Co.*, 193 F.R.D. 554 (S.D. Ind. 1999), the defendant moved to amend its answer to add a

nonparty that it claimed to have learned of only after the expiration of the plaintiff's limitation period. *Id.* at 555-56. The district court emphasized that section 34-51-2-16 permits exceptions to the 150/45-day rule only when consistent with "giving the plaintiffs a reasonable opportunity to add [the nonparty] as an additional defendant to the action before the expiration of the statute of limitation," *id.* at 556, and concluded that "Indiana's Comparative Fault Act does not permit a defendant to plead a nonparty defense after the applicable period of limitation if the defendant was sued more than 150 days before expiration of that period, even if the defendant did not have a reasonable opportunity to discover the nonparty defense before expiration of the period." *Id.* at 558.[9]

¶ 85      In sum, the case law cited by USF supports the proposition that, in the context of a motion to amend an answer to assert a nonparty defense under section 34-51-2-16 of the Indiana Code, such amendment is not permitted if the statute of limitations governing the plaintiff's potential claim against the nonparty has expired. However, the Indiana Supreme Court's decision in *Owens Corning* suggests that expiration of the limitations period is not necessarily a bar to the nonparty defense if, as in the case of former codefendants who were obviously known to the plaintiff beforehand, allowing the defense does not violate the goal of providing plaintiffs with notice of nonparties from which they may be able to pursue recovery.

¶ 86      It does not appear that Indiana courts have addressed the specific procedural scenario presented in this case–that is, whether a defendant would be permitted to assert a nonparty defense in its *first* answer (rather than an amendment), even *after* the expiration of the plaintiff's statute of limitations period. Given the language of section 34-51-2-16 that such a defense *shall* be asserted in the *first answer*, there are plausible arguments both for and against permitting the assertion of the defense in this situation.

¶ 87      On the one hand, permitting assertion of the nonparty defense in this case appears to be consistent with, if not mandated by, the initial sentence of section 34-51-2-16: "A nonparty defense that is known by the defendant when the defendant files the defendant's first answer shall be pleaded as a part of the first answer." Ind. Code Ann. § 34-51-2-16 (West 2004). The use of the term "shall" suggests that a defendant *must* plead the nonparty defense, at the earliest, in the first answer. Notably, the Indiana Supreme Court has stated that the word "shall" in a statute is presumptively interpreted as a mandatory term. *Indiana Civil Rights Comm'n*, 716 N.E.2d at 947 ("When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." (Internal quotation marks omitted.)). Thus, applying the plain language of section 34-51-2-16's directive that a known nonparty defense "shall be pleaded as a part of the first answer" arguably leads to the conclusion that, since USF's "first answer" to the Keppen complaint had not yet been filed during USF's representation by Radogno, the nonparty defense remained viable. Ind. Code Ann. § 34-51-2-16 (West 2004). Such a construction of the statute would not require further analysis

---

[9]Notably, the same federal court more recently held that, although a complaint was filed more than 150 days prior to the expiration of the limitations period and defendant moved to amend its answer with only 7 days remaining in the period, the nonparty defense was nonetheless permissible as defendant had been "reasonably diligent in conducting discovery and there were no unreasonable delays" in asserting the defense. *Hoskins v. Comcast Corp.*, No. 1:12-cv-01280-SEB-MJD, 2013 WL 1857193, at *2-3 (S.D. Ind. May 2, 2013).

with respect to the subsequent provisions regarding application of the 150/45-day rule, or the statutory language regarding the trial court's discretion to depart from that rule.

¶ 88    On the other hand, permitting assertion of the nonparty defense in the first answer–regardless of whether that answer is filed after the expiration of the limitation period on the plaintiff's underlying claim–appears to conflict with the goal expressed in section 34-51-2-16 of "giving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action *before the expiration of the period of limitation applicable to the claim*." (Emphasis added.) Ind. Code Ann. § 34-51-2-16 (West 2004). As stated by the Indiana Supreme Court in *Owens Corning*, "the notice provisions with respect to nonparty affirmative defenses are designed, first and foremost, to advise plaintiffs of potential named defendants from which they may be able to obtain recovery and, secondarily, to put plaintiffs on notice generally of the contours of the defendant's case at trial." *Owens Corning*, 754 N.E.2d at 915. However, in that case, the court found "[n]o violence is done to either of those objectives by permitting a defendant to assert a nonparty affirmative defense reasonably promptly after receiving notice that a named party defendant has been dismissed from the lawsuit." *Id.* Thus, *Owens Corning* indicates that, when the facts are such that assertion of the nonparty defense will not impede the statutory objective of ensuring that the plaintiff had notice of the nonparty, assertion of the defense is permissible.

¶ 89    Although valid arguments can be made in favor of USF's position, there does not appear to be Indiana case law on point regarding application of section 34-51-2-16 where, as in this case, no answer had yet been filed. Nonetheless, the *Owens Corning* decision indicates that the Indiana courts will permit assertion of the nonparty defense, notwithstanding expiration of the limitations period, if it does not interfere with providing the plaintiff notice of the existence of (and opportunity to sue) the nonparty. Without more explicit guidance from the Indiana courts, we thus rely upon the principle of statutory interpretation that directs us to apply the ordinary meaning of the plain language of section 34-51-2-16 of the Indiana Code. Under the statutory language that a nonparty defense known to the defendant "shall be pleaded as a part of the first answer," we conclude that, as USF had not filed *any* answer in the Keppen lawsuit during Radogno's representation, the defense was in fact still viable. Ind. Code Ann. § 34-51-2-16 (West 2004). Likewise, since we interpret the remaining language of the statute as corresponding only to pleadings *after* the first answer, we find those provisions inapplicable to the facts of this case.

¶ 90    Under the specific facts of the Keppen action, we find that, as in *Owens Corning*, section 34-51-2-16's objectives would not be harmed by recognizing the nonparty defense as viable until the filing of USF's first answer. In particular, we can infer that Keppen, as Hardin's passenger at the time of the accident, must have known since shortly after the accident that she had a potential claim against Hardin. Likewise, it is reasonable to infer that Keppen was on notice that, if she pursued a claim against other defendants for contributing to her injuries, Hardin's role as one of the two drivers would be of central importance in assessing the extent to which such other parties were at fault for causing the accident.

¶ 91    We recognize that to permit the nonparty defense after the expiration of Keppen's limitation period would bar her from later naming Hardin as a defendant in her underlying action against USF, which appears to conflict with the statutory goal of allowing plaintiffs a chance to sue directly any nonparty identified in affirmative defenses. Under different facts, permitting the assertion of the nonparty defense in the first answer, regardless of the expiration of the claimant's limitations period, could indeed be unfair in cases involving plaintiffs who,

unlike Keppen, did not have reason to know the identity of the nonparty prior to the defendant's pleading of the affirmative defense. In such circumstances, Indiana courts could disallow assertion of the nonparty defense after the expiration of the plaintiff's limitations period as contrary to the goals of the notice provisions. In this case, however, as Keppen was Hardin's passenger, it is extremely unlikely that she or her attorneys ever lacked knowledge of a potential claim or opportunity to sue Hardin. Thus, she would not suffer surprise or prejudice from USF's assertion of the nonparty defense in its first answer, notwithstanding the expiration of her limitations period. In this regard, our holding is consistent with the proposition supported by *Owens Corning* that an otherwise untimely assertion of the nonparty defense is not necessarily barred where the facts demonstrate that the plaintiff will not be prejudiced, such that the statutory objectives of the notice provisions are not violated. Thus, although we conclude that USF's nonparty defense with respect to Hardin remained viable despite the expiration of Keppen's limitations period, we emphasize that our holding is limited to the particular facts of this case.

¶ 92 Our interpretation of section 34-51-2-16 of the Indiana Code disposes of each of USF's arguments on appeal. That is, our holding that the nonparty defense was still available to USF even after its termination of Radogno leads us to affirm the trial court's denial of USF's motion *in limine* No. 2, which sought a ruling that the time to assert the defense had expired. In turn, since we find that the nonparty defense could in fact have been validly asserted by USF's successor counsel, Radogno's failure to do so while representing USF could not be the proximate cause of USF's alleged damages in the Keppen settlement. Thus, we also affirm the trial court's determination that Radogno was entitled to summary judgment upon denial of USF's motion *in limine* No. 2, since USF could not establish the causation element of its malpractice claim.

¶ 93 Similarly, our reading of section 34-51-2-16 likewise precludes USF from proving the separate element of a breach of the standard of care to support its legal malpractice claim. That is, as we conclude that the nonparty defense remained viable and could have been asserted by successor counsel, USF cannot establish that Radogno breached its duty of care by losing USF's opportunity to assert the defense. Thus, to the extent USF appeals the trial court's earlier denial of its motion for partial summary judgment on the element of breach, we likewise affirm the trial court.

¶ 94 Finally, in addressing USF's argument that the trial court erred in finding that USF could not recover damages for that portion of the Keppen settlement that was paid by its insurer, our holding that the nonparty defense remained viable to USF renders this question moot. That is, since we have determined that USF cannot establish the elements of breach or proximate causation, summary judgment for Radogno is warranted regardless of the issue of damages.

¶ 95 Nevertheless, if we were pressed to address the issue, we would likewise affirm the trial court's conclusion that the $3.65 million in settlement proceeds funded by USF's insurer would not be recoverable in this legal malpractice action. The trial court properly relied on our decision in *Sterling Radio Stations, Inc. v. Weinstine*, which held that a legal malpractice plaintiff could not rely on the collateral source rule to recover as damages settlement funds paid on his behalf by a separate entity. *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 64 (2002) (explaining that in a legal malpractice case, the recovery is "limited to the net amount paid by the plaintiff in the underlying action"). The Illinois Supreme Court decisions cited by USF for its argument that the collateral source rule should apply in this action concerned damages in the context of personal injury medical expenses. See *Wills v. Foster*,

- 23 -

229 Ill. 2d 393 (2008); *Arthur v. Catour*, 216 Ill. 2d 72 (2005). Thus, we see no compelling reason to depart from *Sterling Radio*'s holding that the collateral source rule does not apply in legal malpractice actions.

¶ 96 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 97 Affirmed.