ATTORNEYS FOR APPELLANT
Steve Carter
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Julie A. Brubaker
Heather L. Hagan
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
AMERICAN FAMILY VOICES, INC.
Anthony W. Overholt
Maggie Smith
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE JIM GONZALEZ
Edward O. DeLaney
Craig M. Blanchet
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
THE INDIANA DEMOCRATIC STATE
CENTRAL COMMITTEE AND
THE INDIANA REPUBLICAN STATE
CENTRAL COMMITTEE
James Bopp, Jr.
Anita Y. Woudenberg
Terre Haute, Indiana



# In the
# Indiana Supreme Court

No. 31S00-0803-CV-139

STATE OF INDIANA,

*Appellant (Plaintiff below)*,

v.

AMERICAN FAMILY VOICES, INC.,
JIM GONZALEZ, AND JOHN DOES 2-10,

*Appellees (Defendants below)*.

Appeal from the Harrison Circuit Court, No. 31C01-0609-MI-78
The Honorable Larry R. Blanton, Special Judge

On Petition to Transfer Pursuant to Appellate Rule 56(A)

**December 23, 2008**

**Sullivan, Justice.**

In this case, the State Attorney General attempts to enforce the Indiana Autodialer Law against telemarketers who used autodialers to send pre-recorded messages to Indiana residents. The trial court dismissed the complaint pursuant to Ind. Trial Rule 12(B)(6) because there was no allegation that the telemarketers were making consumer transaction calls with commercial messages. We hold that a complaint filed under this statute is not required to allege that consumer transaction calls are at issue because the law applies to all autodialer calls, not just consumer transaction calls with commercial messages.

## Background

The State seeks an injunction prohibiting the defendants American Family Voices, Inc. ("AFV"), Jim Gonzalez, and John Does 2-10 from making telephone calls using an automated dialing-announcing device, civil penalties for each violation, reasonable attorneys fees, and costs against the defendants. The trial court dismissed the lawsuit under the authority of T.R. 12(B)(6) for "failure to state a claim upon which relief can be granted." The State appealed and petitioned that this Court grant immediate transfer and expedited consideration pursuant to Ind. Appellate Rules 4(A)(2), 21(B), and 56(A). We granted the State's request transfer under App. R. 56(A).

On September 25, 2006, the State filed this lawsuit against AFV and John Does Nos. 1-10. The State alleged that AFV and John Does Nos. 1-10 had made unlawful pre-recorded telephone calls using automatic dialing-announcing devices ("autodialers") in violation of Ind. Code § 24-5-14-5(b). On September 27, 2007, the State amended its complaint naming Jim Gonzalez as John Doe No. 1. The State's amended complaint alleged that the defendants had made unlawful pre-recorded telephone calls in violation of I.C. § 24-5-14-5(b). Gonzalez moved to dismiss the complaint under T.R. 12(B)(6) for failure to state a claim upon which relief can be granted because the State had not alleged that the defendants made consumer transaction calls with commercial messages. AFV joined Gonzalez's motion to dismiss. On February 22, 2008, the trial court granted the motion to dismiss. This case is now before us pursuant to App. R. 56(A).

2

**Discussion**

**I**

In 1988, the Legislature enacted statutory regulations pertaining to autodialers, the Indiana Autodialer Law, codified at I.C. §§ 24-5-14-1 -14. The Autodialer Law recites that its purpose is to protect the privacy, tranquility, and efficiency of telephone customers by generally banning the use of autodialers that deliver pre-recorded messages. See id. The principal mandate of the Autodialer Law is that a caller may not use an autodialer without the consent of the recipient of the call. I.C. § 24-5-14-5(b). The consent may be obtained prior to the call or at the outset of the call by a live operator. However, certain calls made with autodialers are exempt from this rule, I.C. § 24-5-14-5(a); certain other such calls are prohibited altogether, I.C. §§ 24-5-14-8 & 12.

The Legislature's enactment of the Autodialer Law appears to respond to problems associated with autodialers. Autodialers are "uniquely intrusive due to the machine's inability to register a listener's response." Van Bergen v. Minn., 59 F.3d 1541, 1554 (8th Cir. 1995). "[W]hen the technology was in its early stages, the computers sometimes tied up all the lines of a single business, in some cases hospitals, or failed to disconnect after the recipient hung up, thus creating safety concerns." Joseph R. Cox, Telemarketing, the First Amendment, and Privacy: Expanding Telemarketing Regulations Without Violating the Constitution, 17 Hamline J. Pub. L. & Pol'y 403, 404 (1996). Provisions of the Autodialer Law directly address problems linked with the use of autodialers – problems that are not limited to consumer transaction calls with commercial messages.

Gonzalez's main contention in his motion to dismiss was that the Autodialer Law is only "intended for consumer transaction telephone calls." (App. 22.) Because the State did not allege the telephone calls at issue were calls soliciting the purchase or consideration of goods or services, Gonzalez argued that the State failed "to assert an actionable claim under Indiana law." (App. 20.) The trial court agreed and dismissed the lawsuit under the authority of T.R. 12(B)(6) for failure to state a claim for which relief can be granted.

3

The State appeals on the basis of its contention that the Autodialer Law prohibits all callers, subject to exceptions not applicable in this case, from disseminating pre-recorded calls by means of an autodialer without prior consent of the recipients. More specifically, the State contends that I.C. § 24-5-14-5(b) does not limit the prohibition on the use of autodialers to commercial callers proposing consumer transactions. As such, the State contends, it was not required to allege that AFV and Gonzalez engaged in consumer transaction calls with commercial messages and the trial court was wrong to dismiss its complaint.

As can be easily inferred from the presence of the Democratic and Republican State Central Committees as amici in this case, this litigation raises questions as to the extent to which the Autodialer Law limits and may constitutionally limit the use of autodialers to convey political messages. However, all parties agree that no such questions are before this Court at this stage of the litigation and we express no opinion with respect thereto.

**II**

In reviewing a 12(B)(6) motion to dismiss, we look at the complaint in the light most favorable to the plaintiff, with every inference drawn in its favor, to determine if there is any set of allegations under which the plaintiff could be granted relief. King v. S.B., 837 N.E.2d 965, 966 (Ind. 2005). A 12(B)(6) dismissal is improper unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. Id. Dismissals under T.R. 12(B)(6) are "rarely appropriate." Id. (citing State Civil Rights Comm'n v. County Line Park, Inc., 738 N.E.2d 1044, 1049 (Ind. 2000)).[1] Though Indiana's notice pleading rules do not re-

_____

[1] Though this case requires us to apply T.R. 12(B)(6), the parties do not contend that the issue decided in a recent watershed opinion under Fed. R. Civ. P. 12(B)(6) is at stake. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). In Twombly, the Court was called to evaluate the adequacy of pleadings alleging an antitrust conspiracy, in violation of the Sherman Act, 15 U.S.C. § 1 (2000). Id. The Supreme Court overruled its precedent, Conley v. Gibson, 355 U.S. 41 (1957), which had established the "no set of facts" standard used for 50 years to determine whether a complaint should be dismissed for failure to state a claim. Twombly, 550 U.S. at ___, 127 S.Ct. at 1969. The new federal rule is that, to survive a motion to dismiss, a complaint must contain factual allegations "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Id. at ___, 127 S.Ct. at 1965. Even though not joined here, we mention this issue because of the avalanche of cases addressing it – our research of the Westlaw and LEXIS databases indicates that Twombly has already been cited approximately 10,000 times.

quire the complaint to state all elements of a cause of action, Miller v. Mem'l Hosp. of S. Bend, Inc., 679 N.E.2d 1329, 1332 (Ind. 1997) (citing State v. Rankin, 260 Ind. 228, 294 N.E.2d 604, 606 (1973)), the plaintiff must still plead the operative facts necessary to set forth an actionable claim. Trail v. Boys and Girls Clubs of Nw. Ind., 845 N.E.2d 130, 135 (Ind. 2006) (citing Mem'l Hosp. of S. Bend, Inc., 679 N.E.2d. at 1332).

The State's complaint indicates that on or about July 18, 2006, the defendants made or caused to be made telephone calls to certain telephone numbers in Indiana, and that the defendants made those calls using an automated announcing-dialing device that disseminated pre-recorded messages. The complaint further indicates that the defendants are "callers"[2] and that the recipients of the pre-recorded messages are "subscribers."[3] The recipients did not consent to receiving the calls and the calls were not preceded by a live operator. As a result, the complaint alleges, the calls were made in violation of the prohibition in I.C. § 24-5-14-5(b).

The defendants contend that the Attorney General's complaint did not set forth the requisite "operative facts necessary to set forth an actionable claim." Trail, 845 N.E.2d at 135. This is because, the defendants say, the Autodialer Law applies only to consumer transaction calls with commercial messages. Unless the Attorney General alleges that the defendants' calls at issue were consumer transaction calls with a commercial message, defendants continue, the Attorney General has not pled the operative facts necessary to state a claim for which relief can be granted.

We express no opinion as to whether it would be necessary to plead that the defendant made consumer transaction calls with commercial messages in order to state a claim if the Autodialer Law applied only to consumer transaction calls with commercial messages. But because we are of the view that the statute unambiguously reaches all autodialer calls and not just con-

---

[2] A "caller" is "an individual, corporation, limited liability company, partnership, unincorporated association, or the entity that attempts to contact, or contacts, a subscriber in Indiana by using a telephone or telephone line." I.C. § 24-5-14-2.

[3] A "subscriber" is a person who either has subscribed to telephone service from the telephone company or lives or resides with the subscriber. I.C. § 24-5-14-4.

sumer transaction calls with commercial messages, the State's complaint states a claim for which relief can be granted and the trial court was wrong to grant the motion to dismiss.

When faced with a question of statutory interpretation, we first examine whether the language of the statute is clear and unambiguous. City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007). If it is, we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings. Id. This Court has articulated that, "[t]he primary purpose in statutory interpretation is to ascertain and give effect to the legislature's intent." State v. Oddi-Smith, 878 N.E.2d 1245, 1248 (Ind. 2008). The statute itself is the best evidence of legislative intent, "and we strive to give the words in the statute their plain and ordinary meaning." Id. We construe statutes only where there is some ambiguity which requires construction. Grody v. State, 257 Ind. 651, 278 N.E.2d. 280, 285 (1972). The plain meaning of the statute, if it has one, must be given effect. Id.

The plain language of the Autodialer Law is clear and unambiguous by its terms. Like Caesar's Gaul, it divides autodialer calls in partes tres.

- Calls always permitted. Callers and calls in the following categories are exempt from the statute's reach: (1) messages from school districts to inform students, parents, or employees; (2) Indiana telephone subscribers with whom the caller has a current business or personal relationship; and (3) employers advising their employees of work schedules. I.C. § 24-5-14-5(a).

- Calls always prohibited. Callers and calls in the following categories may never use autodialers: "commercial telephone solicitations"[4] made before 9 a.m. or after 8 p.m.; and calls to hospitals, ambulatory outpatient surgical centers, health facilities, emergency medical services facilities, businesses providing emergency am-

---

[4] A "commercial telephone solicitation" means an unsolicited call to a subscriber when: (1) the person initiating the call has not had a prior relationship (business or personal) with the subscriber; and (2) the purpose of the call is to solicit the purchase or the consideration of the purchase of goods or services by the subscriber. I.C. § 24-5-14-3(a). "Commercial telephone solicitation" does not include calls initiated by: (1) the state or a political subdivision for exclusively public purposes; and (2) the United States or any of its subdivisions for exclusively public purposes (involving real property in Indiana). Id. § 3(b).

bulance services, state institutions, private mental health institutions, residential facilities, law enforcement agencies, and fire departments. I.C. §§ 24-5-14-8 & 12.

- <u>All other calls permitted only with recipient's consent</u>. All other callers "may not use or connect to a telephone line an [autodialer] . . . unless: (1) [t]he subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or (2) [t]he message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered." I.C. § 24-5-14-5(b).

The "plain, ordinary, and usual meaning" of the statute clearly delineates when a caller may (or may not) use or connect an autodialer to a telephone line. The categories of permitted calls do not turn on whether the call is a consumer transaction call or that the caller's message is commercial in nature. Nevertheless, AFV and Gonzalez urge this Court to conclude that the Autodialer Law only applies to consumer transaction calls with commercial messages.

Gonzalez and AFV make two arguments in this respect. First, they point out that § 13 of the Autodialer Law provides that violators of the Law are subject to the remedies and penalties provided in I.C. §§ 24-5-0.5-4 & 8 – remedy provisions in a chapter relating to deceptive consumer sales. Because the remedies are targeted at improper consumer sales, they argue, the violations to which they relate must themselves be improper consumer transactions.

Though some remedies contained in I.C. §§ 24-5-0.5-4 & 8 clearly require consumer (or at least commercial) transactions as predicates (e.g., restitution paid to aggrieved customers, id. § 4(d)), others do not (e.g., fines, id. §§ 4(g) & 8). And the Autodialer Law itself contains remedy provisions of injunctive relief, I.C. § 24-5-14-9, and criminal sanction, id. § 10, in addition to the cross reference to I.C. §§ 24-5-0.5-4 & 8. While some of the remedies are targeted at improper consumer and commercial transactions, others are not, making it impossible for us to infer that the statutory scheme is meant to exclude non-consumer and non-commercial transactions.

7

Gonzalez's and AFV's second argument is that the Autodialer Law's explicit limit on using autodialers for commercial telephone solicitation before 9 a.m. and after 8 p.m., I.C. § 24-5-14-8, reflects a general rule that non-consumer and non-commercial calls are permitted without restriction. But we have already seen from the structure of the entire statute that this provision is best read as one of a number of absolute prohibitions in the act, not its general rule. Rather, the general rule is that no caller may use an autodialer without the consent of the recipient of the call, with certain calls exempt from this rule and certain other such calls – including after-hours commercial calls – prohibited altogether.

We conclude that no language in the statute exempts non-consumer and non-commercial calls from its reach and we decline to read such an exemption into the Law for at least two additional reasons. First, the Legislature provides an exemption for some non-consumer and non-commercial calls in the statute (e.g., messages from school districts to inform parents), from which we infer it intended no exemption for all other non-commercial calls. This reflects the principle of statutory construction known as expressio unius est exclusio alterius – in this case, the Legislature's exemption of certain specified calls excludes all other calls from that exemption. Second, the Legislature has shown its ability to craft such an exemption in other statutes, see, e.g., I.C. § 24-5-14-8 (placing hour limitations specifically on "commercial telephone solicitation"); I.C. § 24-4.7-1-1(categorically exempting certain types of calls from Indiana's "Do-Not-Call-Law"); and Congress has provided models as well, see, e.g., Telephone Consumer Protection Act, 47 U.S.C.A. § 227(b)(2)(B)(i) (West 2001 & Supp. 2008) (authorizing the FCC to exempt calls not made for commercial purposes from restrictions on making calls using autodialers). Despite these models, the Legislature has not done so here.

The State's complaint alleges that Gonzalez and AFV made or caused to be made telephone calls to telephone numbers in Indiana using an autodialer and that the calls disseminated pre-recorded messages. The recipients did not consent to the calls and the calls were not preceded by a live operator. The calls did not fall within the ambit of messages always allowed using an autodialer.

For the reasons discussed above, we hold that the State is not required to allege that the defendants made consumer transaction calls with commercial messages using an autodialer in order to defeat a motion to dismiss under T.R. 12(B)(6). The State presented a claim for which relief can be granted for the violations under I.C. § 24-5-14-5(b) alleged in its complaint.

**Conclusion**

Having previously granted transfer pursuant to App. R. 56(A), the trial court's dismissal of the State's complaint is reversed. We remand this case to the trial court for further proceedings.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.