ROBB, Chief Judge,
concurring in part and dissenting in part.
I concur with the majority that the trial court did not err in modifying Father’s child support obligation as discussed in Part I, but respectfully dissent from its conclusion in Part II that the trial court did not err in reinstating Father’s driving privileges.
I agree with the majority that the language of section 31-16-12-11 is clear and unambiguous. Accordingly, deciding whether Father’s driving privileges could be reinstated is a question of law. It is not a question of weighing the evidence, but strictly a determination of whether the outcome is consistent with the legislative mandate. In order to have driving privileges reinstated, the statute requires as a matter of law that the obligor either pay the arrearage in full or establish a payment plan to pay the arrearage via income withholding order. Given that the two alternatives for reinstatement are to pay in full or establish a payment plan to pay, the “plain, ordinary, and usual meaning” of “a payment plan to pay the arrearage” is a plan that will pay the arrearage in full, not simply pay toward or pay down the arrear-age. See State v. Am. Family Voices, Inc., 898 N.E.2d 293, 297 (Ind.2008) (stating that if the statutory language is clear and unambiguous, “we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings.”).
Father’s proposed payment plan is to pay fifty percent of his income via income withholding order toward his current child support obligation, educational expenses, and his arrearage. It is important to note that Father is not proposing to pay fifty *197 percent of his income toward his arrear-age; rather, he is proposing to pay his current child support obligation—set at $49.00 per week; his share of educational expenses—set at $62.00 per week; and then whatever amount brings the total withholding to fifty percent of his income toward his arrearage. Reviewing Father’s child support payment history through the Porter County Clerk’s Office for the five months prior to the hearing on this matter shows that Father had paid just under $5,000.00 in that time, or an average of approximately $250.00 per week. Deducting his current child support and educational expense obligations from this amount yields approximately $140.00 per week to be applied toward his arrearage. Based on the evidence presented at the hearing, the trial court was not able to determine the actual amount of Father’s arrearage, but both parties seem to agree with the trial court’s assessment that his arrearage is in excess of $100,000.00. Statutory interest alone on this amount would exceed $140.00 per week.
Although the statute gives the trial court discretion in reinstating an obligor’s driving privileges, see Ind.Code § 31-16-12-11 (“the court may stay the issuance of [a suspension] order”) (emphasis added), I do not believe the statute gives the trial court the discretion to reinstate Father’s driving privileges under the circumstances of this case. Although there is nothing wrong with Father’s plan per se, it is not as a matter of law a “payment plan to pay the arrearage.” In fact, it will barely make a dent in the arrearage, if at all. Thus, although Father is certainly entitled to propose paying only fifty-percent of his income toward his child support obligations (past and present) and the trial court may be entitled to accept that proposal, I do not believe the trial court is also entitled to reinstate his driving privileges based upon such a proposal. Unfortunately, given the substantial amount of Father’s arrearage, even a proposal to pay 100 percent of his income might not amount to a “plan to pay the arrearage.” As such a proposal would be both unreasonable and contrary to law, however, I believe the trial court could exercise its discretion in this case and reinstate Father’s driving privileges only if Father established a plan to pay the maximum amount allowed by law, or sixty-five percent of his income. See 15 U.S.C. § 1673(b)(2). Nothing more can be legally required of him, but anything less under the circumstances of this case is contrary to the statutory language that “a payment plan to pay the arrearage” be established before the trial court may reinstate previously-suspended driving privileges.
I take into account that after many years of failing to meet his obligations, Father appears to be taking responsibility for financially supporting his children and I do not wish to discourage him from continuing to do so. However, there is no “tipping point” exception to the dictates of the statute. See Op. at 196. In other words, I do not believe the trial court’s discretion extends so far as rewarding something less than a plan to pay the arrearage with the reinstatement of driving privileges based solely on the determination that reinstatement will make it more likely Father will comply with a plan that does not meet the requirements of the statute in the first instance.
The statute requires “a payment plan to pay the arrearage” be established in order for the trial court to reinstate Father’s driving privileges. As Father’s plan will neither pay his arrearage nor does it require him to pay the maximum amount allowed by law, I would hold the trial court clearly erred in reinstating Father’s driv *198 ing privileges. Accordingly, I dissent from Part II of the majority decision.