## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 23 2017, 6:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin G. Kerr
Hoeppner Wagner & Evans LLP
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Clay M. Patton
Osan & Patton, LLP
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lori A. Devereaux,<br>*Appellant-Defendant,*<br><br>v.<br><br>Homeowners' Association of Hunters Ridge Estates, Inc.,<br>*Appellee-Plaintiff* | May 23, 2017<br><br>Court of Appeals Case No.<br>64A04-1612-CC-2956<br><br>Appeal from the Porter Superior Court<br><br>The Honorable Roger V. Bradford, Judge<br><br>Trial Court Cause No.<br>64D01-1409-CC-8463 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Lori Devereaux owned two lots in a subdivision that were subject to restrictive covenants. After several years, she stopped mowing the grass and paying the annual dues, and the homeowners association paid to have her grass mowed. The homeowners association later sued her. When the homeowners association sought to introduce evidence of the mowing fees at trial, Devereaux objected on grounds that the homeowners association did not plead a claim for mowing fees in the complaint. The trial court overruled her objection and admitted the evidence. It later entered judgment in favor of the homeowners association for both unpaid annual dues and mowing fees. Devereaux now appeals. Because the complaint did not put Devereaux on notice that the homeowners association was seeking mowing fees and Devereaux objected to evidence of the mowing fees at trial, we reverse the portion of the trial court's judgment awarding mowing fees to the homeowners association.

# Facts and Procedural History

[2] Hunters Ridge Estates is a subdivision in Westville. Devereaux, a homebuilder, purchased two lots in the subdivision—Lots 61 and 62—in 1999. The lots were subject to restrictive covenants. Section IX, which governs landscaping, provides that lawns are to be reasonably maintained and that grass is to be mowed no higher than three inches. It also provides that "[w]ithin 5 days notice to a lot owner of a vacant lot not being maintained the . . . [Homeowners] Association shall employ a firm to mow &/or clear the lot and

the lot owner shall be responsible for the cost of same," including collection fees. Appellant's App. Vol. II p. 72. In addition, Section XXV, which governs the Homeowners Association, provides that the Association "shall impose and collect annual assessments for the maintenance and improvements of park areas and/or other 'common areas' and for the provision of any security services . . . ." *Id.* at 73. Initially, the annual assessment was set at $125 per lot; however, the restrictive covenants have been amended several times to increase this amount. Failure to pay the annual assessment is considered a violation of the restrictive covenants, subject to interest and attorney's fees.

Devereaux paid the annual assessments and maintained the lots until 2008. In March 2012, the Association sent Devereaux a letter asking her to mow the grass on Lots 61 and 62 on or before Friday, April 13, 2012, in accordance with Section IX of the restrictive covenants. According to the letter, if Devereaux did not mow the grass, then the Association would have the grass mowed at her expense at a cost of "$100.00 for each individual mowing." *Id.* at 92.

In October 2014, the Homeowners Association filed suit against Devereaux. The complaint contains the following allegations:

> 4. The primary purpose of the Association is to insure high standards of maintenance and operation of all property and real estate in the Subdivision and to maintain and promote the desired character of the Subdivision.

> * * * * *

> 8. Under its[] Restrictive Covenants, the Association has the power to impose and collect annual assessments on each lot within the Subdivision. . . .

> 9. Devereaux has not paid any assessments on Lot 61 or Lot 62 from 2008 thru 2014.

> 10. As of September 1, 2014, the total balance owed and past due to the Association from Devereaux for the unpaid assessments on Lot 61 and Lot 62 is [$15,581.90], not including interest, attorney's fees and other costs of collection.

*Id.* at 14-15.

[5] A pretrial conference was held on August 11, 2016.[1] At this conference, the parties filed their witness lists, exhibit lists, and contentions. The Association's contentions included the following:

> 9. Under its[] Restrictive Covenants, the Association has the power to impose and collect annual assessments, late fees, **mowing fees** and interest on each lot within the Subdivision.

> \* \* \* \* \*

> 11. Devereaux has not paid any assessments, late fees, **mowing fees** or interest on Lot 61 or Lot 62 from 2008 through the present.

---

[1] At this time, Devereaux was no longer the owner of the lots, as they were sold at a tax sale in 2015.

12. Anticipating no payments prior to the Bench Trial, as of September 1, 2016, the total balance owed and past due to the Association from Devereaux on Lot 61 and Lot 62 for unpaid assessments, late fees, **mowing fees** and interest will be [$20,825.62], not including attorney's fees and other costs of collection.

*Id.* at 39-40 (emphases added). The Association's exhibits included two documents titled "Outstanding Dues & Assessments," one for each lot. These documents listed the unpaid annual assessments/late fees and mowing fees/interest from 2008 to 2016.

[6] The next month, a bench trial was held. When the Association moved to admit the "Outstanding Dues & Assessments"—Exhibits 10 and 11—defense counsel objected as follows:

Your Honor, we object to the issues of the mowing costs and expenses. The complaint in this matter alleges unpaid assessments and dues in paragraph 8 arising out of Article 25 of the covenants. Mowing fees . . . arise out of Article 9, and there was no claim for any mowing fees that were owed in the complaint. And as this matter has not been properly pled, we would object to consideration of any evidence for mowing fees.

Tr. p. 14. The trial court admitted Exhibits 10 and 11 over objection. During closing argument, defense counsel briefly reiterated his argument that "there was no claim in the complaint arising from mowing fees." *Id.* at 45. The court took the case under advisement and later issued a written order entering judgment in favor of the Association for $17,882.56—$10,605.80 of which was

for mowing fees/interest from 2012 to 2015—plus $6,434.00 in attorney's fees, for a total judgment of $24,316.56.

[7] Devereaux now appeals.

# Discussion and Decision

[8] Devereaux raises two issues concerning mowing fees, one of which we find dispositive. That is, she argues that the trial court abused its discretion in admitting evidence of the mowing fees because the Association did not plead a claim for mowing fees in its complaint. As a notice-pleading state, Indiana requires that pleadings contain (1) "a short and plain statement of the claim showing that the pleader is entitled to relief" and (2) "a demand for relief." Ind. Trial Rule 8(A). In practice, this liberal standard merely requires that a "complaint . . . put the defendant on notice concerning why it is potentially liable and what it stands to lose." *KS&E Sports v. Runnels*, 2017 WL 1435907, at *5 (Ind. Apr. 24, 2017) (quotation omitted). Although the complaint does not need to state all elements of a cause of action, it must set forth the operative facts necessary to set forth an actionable claim. *State v. Am. Family Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008), *reh'g denied*.

[9] The Association does not dispute Devereaux's claim that it did not expressly set forth a claim for mowing fees in its complaint. Indeed, the complaint alleges that the Association has the power to impose and collect "annual assessments" and that Devereaux has not "paid any assessments on Lot 61 or Lot 62 from

2008 thru 2014." There is no mention of mowing fees or Section IX, which allows the Association to recover mowing fees, in the complaint.

[10] Nevertheless, the Association claims that it put Devereaux on notice that it was seeking mowing fees for the following three reasons: (1) it attached the restrictive covenants to the complaint, and Section IX allows the Association to recover mowing fees; (2) the amount of damages requested in the complaint—nearly $16,000—should have tipped off Devereaux that it was seeking more than just unpaid annual assessments; and (3) its contentions and exhibits, filed about a month before trial, list mowing fees. We reject each of these reasons.

[11] First, the Association argues that attaching the restrictive covenants to the complaint put Devereaux on notice that it was seeking mowing fees. Notably, the covenants and their amendments are sixteen pages long, and Section IX is a mere paragraph long. Devereaux was not required to sift through all the covenants to hypothesize every possible claim she might be liable for.

[12] Second, the Association argues that Devereaux, "a builder and former attorney," should have known that its request for nearly $16,000 (not including interest and attorney's fees) included "fees for more than the annual dues." Appellee's Br. pp. 12-13. But this argument highlights the flaw in the Association's complaint. Just because $16,000 might be larger than the unpaid dues does not mean that mowing fees are necessarily included, as opposed to something else. As Devereaux points out, "The fact that a complaint seeks

excessive damages does not mean that there are numerous unpled claims which the defendant must figure out." Appellant's Reply Br. p. 8.

[13] Last, the Association argues that its contentions and exhibits, filed about a month before trial, allege that Devereaux owes mowing fees. But these documents cannot, after the fact, correct any deficiencies in the complaint. If the Association wanted to add a claim for mowing fees, then it should have sought to amend the complaint. *See* Ind. Trial Rule 15(A). But it did not do this. Instead, when the Association sought to introduce evidence of the mowing fees at trial, Devereaux properly objected on grounds that the mowing fees were not pled in the complaint. *See Mercantile Nat'l Bank of Ind. v. First Builders of Ind., Inc.*, 774 N.E.2d 488, 492 (Ind. 2002) ("There are generally two factors to be considered when addressing whether a party has impliedly consented to a non-pleaded issue at trial. The first is whether the opposing party had notice of the issue; the second, whether the opposing party objected to the issue being litigated at trial."), *reh'g denied*; *see also* T.R. 15(B). Although the trial court overruled Devereaux's objection, no attempt was made at this point to amend the complaint. Because the Association did not plead a claim for mowing fees in its complaint and Devereaux objected to evidence of the mowing fees at trial, we reverse the portion of the trial court's judgment

awarding mowing fees/interest to the Association ($10,605.80) and remand for entry of a revised judgment.[2]

[14] Reversed in part and remanded.

Bailey, J., and Robb, J., concur.

---

[2] Devereaux argues that the award of attorney's fee should be reduced to reflect only work that was done on the claim for unpaid annual assessments. The trial court should address this issue on remand.