FILED

Jun 26 2020, 8:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin M. L. Jones
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Andrea Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marion County Circuit Court, *Appellant-Defendant,* | June 26, 2020 |
| | Court of Appeals Case No. 19A-MI-1536 |
| v. | Appeal from the Marion Superior Court |
| Dustin King, *Appellee-Plaintiff* | The Honorable James B. Osborn, Judge |
| | Trial Court Cause No. 49D14-1711-MI-42083 |

**May, Judge.**

[1] Marion Circuit Court ("MCC") appeals the denial of its motion to dismiss Dustin King's ("King") claims against it under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. MCC presents multiple issues for review, which we restate as:

> 1. Whether the trial court erred when it denied MCC's motion to dismiss King's claims under Section 504 of the Rehabilitation Act; and

> 2. Whether the trial court erred when it denied MCC's motion to dismiss King's claims under Title II of the ADA.

We reverse and remand.

# Facts and Procedural History[1]

[2] In 2013, King was involved in a family law matter in MCC. As part of that matter, MCC ordered King and the other party to engage in mediation. As the parties did not have the funds to pay for mediation, they qualified for and were accepted into the Marion County Modest Means Mediation Program ("Modest Means"). The parties were scheduled to participate in mediation on July 12, 2013.

---

[1] We held oral argument on this matter remotely via Zoom on May 21, 2020. We appreciate counsel's flexibility in participating in an oral argument in this novel manner and commend counsel on their thorough presentation of the issues.

On June 21, 2013, King, who is deaf and communicates through American Sign Language ("ASL"), requested the appointment of an ASL interpreter to be present at the upcoming mediation. MCC denied his request, stating in its order that the "Court does not supply interpreters for mediation hearings." (App. Vol. II at 17.) King filed a motion to reconsider, arguing MCC's decision violated his rights under Title II of the ADA and Section 504 of the Rehabilitation Act. MCC denied King's motion to reconsider but waived King's mandatory participation in mediation in the family law matter.

King wanted to participate in mediation and filed a motion for MCC to certify the issue for interlocutory appeal, which MCC denied. King participated in mediation through the previously-approved Modest Means Program with the aid of a family member as his interpreter, and the family law matter was ultimately resolved.

On November 7, 2014, in Federal District Court, King filed suit against MCC, the Indiana Supreme Court, the Marion County Office of the Court Administrator, the Marion County Council, and the Indiana Supreme Court Division of State Court Administration, alleging MCC's actions violated his rights under Title II of the ADA and Section 504 of the Rehabilitation Act. On May 5, 2015, the Federal District Court dismissed with prejudice King's claims under the Rehabilitation Act as to all defendants. It also dismissed with prejudice his ADA claims against all defendants except MCC. *King v. Indiana Supreme Court, et al.*, No. 1:14-cv-01092-JMS-MJD, 2015 WL 2092848 (S.D.

Ind. May 5, 2015).  King did not appeal the Federal District Court's dismissals of those claims.

[6]     After cross-motions for summary judgment and a bench trial on King's remaining ADA claim against MCC, the Federal District Court ruled in King's favor and awarded him $10,038.00 in damages.  *King v. Marion Circuit Court*, No. 1:14-cv-01092-JMS-MJD, 2016 WL 3031085 (S.D. Ind. May 27, 2016). MCC appealed, and the Seventh Circuit Court of Appeals reversed, holding the language of the ADA did not explicitly abrogate Indiana's sovereign immunity to King's claim.  *King v. Marion Circuit Court*, 868 F.3d 589, 593 (7th Cir. 2017), *reh'g denied*, *reh'g en banc denied*, *cert. denied*.  The Seventh Circuit left undecided whether Indiana had by state statute or precedent waived its sovereign immunity to King's claim and stated:

> Since we do not decide the merits, King may, if he wishes, present his contentions to Indiana's courts.  Even when Congress has not abrogated states sovereign immunity, states themselves may waive it in full or in part.  *See Alden v. Maine*, 527 U.S. 706, 755, 119 S. Ct. 2240, 144 L.Ed.2d 636 (1999).  Indiana is among many states that have consented to be sued in their own courts over many alleged wrongs.  *See Hoagland v. Franklin Township Community School Corp.*, 27 N.E.3d 737, 749 (Ind. 2015); *Campbell v. State*, 259 Ind. 55, 62-63, 284 N.E.2d 733 (1972).  We need not consider whether King's claim might be subject to the notice and timing rules of the Indiana Tort Claims Act, Ind. Code §§ 34-13-3-3, 34-13-3-6, or whether, because it is based on a statute, it is outside that law's requirements.  Those and related issues are for the state's judiciary.

> The judgment of the district court is reversed, and the case is remanded with instructions to dismiss without prejudice to raising a Title II claim in state court.

*Id.* at 594.

[7] On November 9, 2017, King filed a complaint against MCC in Marion Superior Court. King alleged MCC violated his rights under Title II of the ADA. On June 28, 2018, MCC filed a motion to dismiss the complaint. After oral argument and briefing of the issues, the trial court denied MCC's motion to dismiss. MCC filed a motion to certify the issue for interlocutory appeal, and the trial court denied that request on December 18, 2018.

[8] On December 21, 2018, King filed an amended claim alleging MCC violated his rights under Title II of the ADA and Section 504 of the Rehabilitation Act. MCC moved to dismiss King's complaint under Indiana Trial Rules 12(b)(1) and 12(b)(6), arguing that King's claims were barred by sovereign immunity, judicial immunity, waiver, and *res judicata*, and that each claim failed as a matter of law. After oral argument and briefing of the issues, the trial court summarily denied MCC's motion to dismiss on April 29, 2019.

[9] On May 15, 2019, MCC filed a motion to certify the trial court's April 29, 2019, order denying its motion to dismiss for interlocutory appeal. After briefing and a stay in the proceedings, the trial court granted that request. We accepted jurisdiction over the matter on August 26, 2019.

# Discussion and Decision

[10] Our standard of review for the trial court's denial of a motion to dismiss under Indiana Trial Rules 12(B)(1) and 12(B)(6) is well-settled:

> Trial Rule 12(B)(1) addresses the "[l]ack of jurisdiction over the subject matter." In reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Trial Rule 12(B)(1), the relevant question is whether the type of claim presented falls within the general scope of the authority conferred upon the court by constitution or statute. *Robertson v. Anonymous Clinic*, 63 N.E.3d 349, 356 (Ind. Ct. App. 2016), *trans. denied*. A motion to dismiss for lack of subject matter jurisdiction presents a threshold question with respect to a court's power to act. *Id*. "The standard of review for a trial court's grant or denial of a 12(B)(1) motion to dismiss for lack of subject matter jurisdiction is 'a function of what occurred in the trial court.'" *Berry v. Crawford*, 990 N.E.2d 410, 414 (Ind. 2013) (citing *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001)), *reh'g denied*. Where the facts before the trial court are not in dispute, the question of subject matter jurisdiction is one of law, and we review the trial court's ruling de novo. *Id*. Likewise, when reviewing a final judgment, we review all conclusions of law de novo. *Id*.

> \* \* \* \* \*

> Trial Rule 12(B)(6) addresses the "[f]ailure to state a claim upon which relief can be granted." A motion to dismiss under Trial Rule 12(B)(6) tests the legal sufficiency of the plaintiff's claim, not the facts supporting it. *Bellwether Properties, LLC v. Duke Energy Indiana, Inc.*, 87 N.E.3d 462, 466 (Ind. 2017). A dismissal under Trial Rule 12(B)(6) is improper "'unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief.'" *Id*. (quoting *State v. American Family Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008), *reh'g denied*). We

review a Trial Rule 12(B)(6) dismissal de novo, giving no deference to the trial court's decision. *Id*. In reviewing the complaint, we take the alleged facts to be true and consider the allegations in the light most favorable to the nonmoving party, drawing every reasonable inference in that party's favor. *Id*. A complaint states a claim on which relief can be granted when it recounts sufficient facts that, if proved, would entitle the plaintiff to obtain relief from the defendant. *Id*.

*Metz as Next Friend of Metz v. Saint Joseph Reg'l Med. Ctr.- Plymouth Campus, Inc.*, 115 N.E.3d 489, 493-4 (Ind. Ct. App. 2018).

## 1. King's Claims under Section 504 of the Rehabilitation Act

Under Section 504 of the Rehabilitation Act,

> [n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794. King brought a claim in Federal District Court against MCC[2] alleging it violated his rights under Section 504 of the Rehabilitation Act when it denied his request for an ASL interpreter because MCC was a "recipient[] either directly and/or indirectly of federal financial assistance and . . .

---

[2] As noted in the facts, King's claim under Section 504 of the Rehabilitation Act was brought against several other defendants, however, those parties are not relevant to this analysis because they are not parties to the state action before us.

recipient[] either directly and/or indirectly of federal financial assistance specifically for the provision of ASL interpreters and other auxiliary aids and services[.]" (Motion for Interlocutory Appeal in State Action, Ex. B at 3.)

[12] The Federal District Court dismissed with prejudice King's claim against MCC under Section 504 of the Rehabilitation Act because King's complaint indicated Modest Means was "funded by the collection of a $20.00 fee from every party filing for legal separation, paternity, or a dissolution case in each respective county and a co-payment by participants in the program based on ability to pay." *King*, 2015 WL 2092848 at *16 (quoting from internal filing). The District Court rejected King's argument trying to directly or indirectly impute any federal assistance MCC received to Modest Means by stating: "Any 'economic ripple effects' that the Modest Means Mediation Program may benefit from, such as use of the County Defendants' office space, are insufficient to bind the Modest Means Mediation Program to the Rehabilitation Act." *Id*.

[13] When King filed his claim in state court, he again asserted MCC violated his rights under Section 504 of the Rehabilitation Act. MCC moved to dismiss that claim under the doctrine of *res judicata*, and the trial court denied that motion. On appeal, MCC argues the trial court erred when it denied MCC's motion to dismiss King's claims under Section 504 of the Rehabilitation Act because the Federal District Court's dismissal with prejudice of that claim precludes it from reconsideration.

[14]     *Res judicata* serves to prevent repetitious litigation of disputes that are essentially the same. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003). As we have explained, claim preclusion

> applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. The following four requirements must be satisfied for claim preclusion to apply as a bar to a subsequent action: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013), *trans. denied*.

[15]     Regarding the first factor for claim preclusion, it is undisputed that the District Court was a court of competent jurisdiction. *See* 28 U.S.C. § 1331 (Federal district courts "shall have original jurisdiction of all civil actions under the Constitution, laws, or treaties of the United States."); *see also Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000) ("the Rehabilitation Act is enforceable in federal court against recipients of federal largess"). Second, regarding whether the former judgment was rendered on the merits, "dismissal with prejudice is conclusive of the rights of the parties and is *res judicata* as to any questions that

might have been litigated[.]" *Afolabi v. Atlantic Mortg. & Investment Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006) (emphasis added).

[16] Regarding the third factor, whether the matter here – whether MCC received federal funding to operate Modest Means – was, or could have been determined in the prior action, we note the virtually identical phrasing in King's complaints before the federal and state courts. (*Compare* Motion for Interlocutory Appeal Ex. B at 3 (alleging in federal claim that MCC "directly and/or indirectly" received federal funds to operate Modest Means) *with* App. Vol. II at 13-14 (alleging MCC "was recipient of [sic] either directly and/or indirectly of federal financial assistance" to operate Modest Means)).[3] Regarding the fourth factor, both the federal and state cases have the same defendant: MCC. Therefore, all elements of claim preclusion exist here. Based thereon we conclude the trial court erred when it denied MCC's motion to dismiss King's claims under Section 504 of the Rehabilitation Act because those claims were barred by *res judicata*. *See, e.g., Freels v. Koches*, 94 N.E.3d 339, 344 (Ind. Ct. App. 2018) (affirming dismissal of complaint based on res judicata, specifically claim preclusion).

---

[3] King asserts he has "new facts" (Appellee's Br. at 28), that indicate MCC receives federal funding that were not discovered at the federal level because "there were ongoing issues with discovery" (Oral Argument, May 21, 2020, at 31:28-31:34) before the District Court. However, any issues in discovery that resulted in an incorrect decision by the District Court could have been appealed or cross appealed to the Seventh Circuit, and King did neither.

## 2. King's Claims under Title II of the ADA

Title II of the ADA states that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The parties do not dispute that King has a disability covered by the ADA; instead, they dispute whether Indiana is immune from suit based on sovereign immunity.

The Eleventh Amendment to the United States Constitution gives States immunity from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State." Despite the plain language of that Amendment, which explicitly states it applies to citizens of a state other than the state being sued, the United States Supreme Court has repeatedly held sovereign immunity under the Eleventh Amendment also applies in claims against a state by its own citizens. *See, e.g., Bd. of Tr. of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (listing cases extending Eleventh Amendment immunity to claims between states and their own citizens). The State need not be a named party for Eleventh Amendment immunity to apply; sovereign immunity may be asserted by a state's constituent divisions and by those divisions' officers and employees. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The parties do not dispute that MCC is a division of Indiana's judicial branch of government and entitled to assert sovereign immunity.

Sovereign immunity is not absolute, and it may be waived, generally, in two ways – by the plain language of the relevant federal statute, *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000), or through the State's own action, either by consenting to be sued in a similar claim, or by the General Assembly abrogating the state's sovereign immunity with regards to certain claims. *Esserman v. Indiana Dep't of Envtl. Mgmt.* 84 N.E.3d 1185, 1188-90 (Ind. 2017).

## A. Abrogation of Sovereign Immunity Based on the Plain Language of Title II of the ADA

Section Five of the Fourteenth Amendment states: "Congress shall have power to enforce, by appropriate legislation, the provisions of this article." This section authorizes Congress to abrogate states' sovereign immunity in circumstances where sovereign immunity under the Eleventh Amendment would limit other rights guaranteed under the Fourteenth Amendment.[4] *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). To exercise this authority, Congress must unequivocally intend to do so and act pursuant to a valid grant of constitutional authority. *Kimel*, 528 U.S. at 73.

---

[4] The Fourteenth Amendment states, in relevant part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

14th Amendment to the United States Constitution, Section 1.

MCC asserts any argument regarding the abrogation of sovereign immunity by operation of the plain language of Title II of the ADA is not available before a state court based on issue preclusion under the doctrine of *res judicata*. As we stated *supra*, *res judicata* serves to prevent repetitious litigation of disputes that are essentially the same. *Dawson*, 796 N.E.2d at 1195. Issue preclusion, also known as collateral estoppel,

> bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. If issue preclusion applies, the former adjudication is conclusive in the subsequent action, even if the actions are based on different claims. The former adjudication is conclusive only as to those issues that were actually litigated and determined therein. Thus, issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument. In determining whether issue preclusion is applicable, a court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply issue preclusion given the facts of the particular case.

*Angelopoulos*, 2 N.E.3d at 696.

As part of its decision on MCC's appeal in King's federal claim under Title II of the ADA, the Seventh Circuit held:

> We have now run out of theories about how awarding King damages under Title II would protect anyone's constitutional rights. King was invited to come to the Marion Circuit Court for resolution of his domestic-relations dispute. The Circuit Court

therefore did not actually violate any right falling under *Lane*'s[5] "fundamental access" umbrella. Nor could abrogating sovereign immunity avert future violations. King has not suggested that any constitutional right of access to court is under threat in Marion County. All of this leads to just one conclusion—that this case has no constitutional dimension at all. Title II therefore does not abrogate sovereign immunity here, and the Marion Circuit Court remains immune from this suit in federal court.

*King*, 868 F.3d at 594 (internal citations omitted) (footnote added).

[23] Regarding the factors for issue preclusion, King had a full and fair opportunity in federal court to litigate the issue of whether the language of Title II of the ADA abrogated Indiana's sovereign immunity with regard to King's claims.[6] The Federal District Court agreed with King that the language of the ADA abrogated Indiana's sovereign immunity and that MCC's actions violated the ADA, and it ordered MCC to pay King over $10,000 in damages. However, MCC appealed that decision to the Seventh Circuit Court of Appeals, and the Seventh Circuit reversed. King then appealed the Seventh Circuit's decision to the United States Supreme Court, which denied King's request for *certiorari*.

---

[5] *Tennessee v. Lane*, 541 U.S. 509, 531 (2004).

[6] King's federal and state claims under Title II of the ADA are virtually identical. (*Compare* Motion for Interlocutory Appeal Ex. B at 6 (MCC intentionally discriminated against King in violation of Title II of the ADA "by refusing to provide auxiliary aids and services necessary to ensure an equal opportunity for King to participate in mandatory mediation, a program and law required and promoted by [MCC].") *with* App. Vol. II at 22 (MCC intentionally discriminated against King in violation of Title II of the ADA "by refusing to provide auxiliary aids and services necessary to ensure an equal opportunity for King to participate in mandatory mediation, a program and law required and promoted by [MCC].")).

Further, it is not otherwise unfair to apply issue preclusion here, because the State's sovereign immunity from King's claim may also be abrogated by the State's own action, and thus the Seventh Circuit left open an avenue by which King could pursue his Title II claim in state court. In its opinion, the Seventh Circuit explicitly stated it intended its decision on the issue of statutory abrogation of sovereign immunity to control, and it stated King was free to present before a state court the issue of abrogation of sovereign immunity based on a state's consent to be sued. *See id.* ("King may, if he wishes, present his contentions to Indiana's courts. Even when Congress has not abrogated states' sovereign immunity, states themselves may waive it in full or in part."). Therefore, all elements of issue preclusion are satisfied here. Based thereon, we conclude the trial court erred when it denied MCC's motion to dismiss King's claim under Title II of the ADA as to the issue of whether the language of Title II of the ADA abrogates MCC's sovereign immunity with regard to King's claim.

### B. Waiver of Sovereign Immunity by State Action

A state may also waive its sovereign immunity by consenting to be sued in a similar claim or by action of the General Assembly abrogating the state's sovereign immunity with regards to certain claims. *Esserman,* 84 N.E.3d at 1189. In *Esserman*, an employee of the Indiana Department of Environmental Management ("IDEM"), Esserman, was fired after she alleged irregularities regarding IDEM's dispersal of funds. *Id.* at 1187. Esserman filed a claim against IDEM for wrongful termination, alleging IDEM violated Section 8 of

the Indiana False Claims and Whistleblower Act ("Whistleblower Provision"). IDEM moved to dismiss Esserman's claims and asserted sovereign immunity. *Id.* Our Indiana Supreme Court noted the two methods by which the State could waive its sovereign immunity through state action – by action of the legislature and by consent to suit. *Id.* at 1188.

[26] Regarding abrogation by action of the Indiana State Legislature, the Court outlined the history of waiver of sovereign immunity when the State is sued for a tort, dating back to Indiana's earliest days of statehood. *Id.* at 1189-90. The Court noted that, in the past, Indiana had abrogated sovereign immunity for "proprietary functions . . . [and] government functions, too, except for the well-known trio of court-prescribed circumstances where the immunity remains intact: preventing crime, appointing officials to public office, and decision-making by the court." *Id.* at 1190. The case history culminated in the enactment of the Indiana Tort Claims Act in 1974, "which grants immunity from tort liability to many governmental entities, including the State." *Id.* Thus, because Esserman's claim was not based in tort, our Indiana Supreme Court reasoned, the State retained its sovereign immunity from suit for Esserman's claim under the Whistleblower Provision. *Id.*

[27] In the case before us, we do not have a tort claim; instead King's claims are related to decision-making by the court and rooted in federal statute. King does not allege MCC was negligent in denying his request for an interpreter; instead he claims MCC violated his rights under a federal statute by doing so. Thus, based on our Indiana Supreme Court's holding in *Esserman*, the State of Indiana

has not waived its sovereign immunity. *See id*. at 1191 ("the common law applicable to such non-tort claims . . . is that State sovereign immunity remains intact"). The trial court erred when denied MCC's motion to dismiss King's claim under Title II of the ADA because the State has not waived its sovereign immunity by state action.

# Conclusion

[28] While we are sympathetic to King's plight, we are procedurally unable to provide him relief in this matter. The trial court is precluded by claim preclusion under the doctrine of *res judicata* from considering King's claims under Section 504 of the Rehabilitation Act. Similarly, the trial court is precluded by issue preclusion under the doctrine of *res judicata* from considering the issue of abrogation of Indiana's sovereign immunity based on the language of Title II of the ADA. Finally, there has been no state action evincing Indiana's consent to suit under a non-tort claim such as King's claim under Title II of the ADA. Therefore, we conclude the trial court erred when it denied MCC's motion to dismiss King's claims. Accordingly, we reverse the decision of the trial court and remand for dismissal of King's complaint.

[29] Reversed and remanded.

Crone, J., and Pyle, J., concur.